Charles Lynn BROWNLOW and Marlene H. Brownlow, Appellants,

v.

The STATE of Texas, Appellee.

No. 14–07–00547–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 5, 2008.

Rehearing Overruled May 29, 2008.

William D. Noel, Houston, for Charles appellants.

Walter C. Brocato, Austin, for appellee.

Panel consists of Chief Justice HEDGES, Justice ANDERSON, and Senior Justice PRICE.*

**OPINION**

FRANK C. PRICE, Senior Justice (Assigned).

Appellants Charles Lynn Brownlow and Marlene H. Brownlow ("Brownlows") appeal from the trial court's granting of the State's plea to the jurisdiction on June 26, 2007. They contend that the State has waived sovereign immunity in their inverse condemnation claim. The State responds that because the soil was properly disposed of in a previous condemnation proceeding, this rendered the Brownlows' inverse condemnation claim defective and it is barred by sovereign immunity. We reverse and remand.

* Senior Justice Frank C. Price sitting by assign- ment.

## I. Factual and Procedural Background

On April 14, 2000, the State filed a Petition for Condemnation in the County Court at Law No. 3 of Brazoria County, Texas, to acquire an interest in 12.146 acres of land, owned by the Brownlows, for the opening, construction and maintenance of a detention facility (a pond that would retain water) as part of the State's Highway 35 widening project. The pond was to have a fill volume of 84,747 cubic meters, requiring 87,544 dirt to be displaced. The Petition for Condemnation initially proceeded as a condemnation for the fee estate in the 12.146 acres. The parties subsequently signed an Agreed Judgment granting the State "a permanent easement in the property ... for the purpose of opening, constructing, and maintaining a detention/mitigation facility in, over, and across the tract of land for the purpose of making additions to, improvements on, and repairs to said detention facility or an part thereof ..." and granted the Brownlows "[$55,000.00] for the interests in the properties herein condemned; and for damages, if any, to Condemnees' remaining lands."

The State then began to remove 87,544 cubic meters of dirt and use it in another section of the Highway 35 widening project. The Brownlows protested that the excavated soil was not part of the permanent easement condemnation. They contend that as the fee simple owners of the 12.146 acres the soil belongs to them; hence the State's appropriation of the soil requires an additional condemnation with separate compensation.

## II. Law and Standard of Review

### A. Plea to the Jurisdiction

Subject-matter jurisdiction is essential to a court's authority to act. *Con't*

*Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 448 n. 2 (Tex.1996). Hence, the plaintiff has the burden to plead facts affirmatively demonstrating the trial court has jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex.2007). Upon a finding that the court lacks subject matter jurisdiction, the court must dismiss the suit. *Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A plea to the jurisdiction raises a question of law that we review *de novo*. *Holland*, 221 S.W.3d at 642; *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 394 (Tex.2007); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). A plea to the jurisdiction is a dilatory plea intended to defeat a cause of action without regard to the merits of the asserted claims. *See Bland Indep. Sch. Dist*, 34 S.W.3d at 554.

A plea to the jurisdiction, based on defendant's sovereign immunity, challenges a trial court's jurisdiction without regard for the merits of the claims. *Holland*, 221 S.W.3d 639; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 860 (Tex.App.-Houston [14th Dist.] 2002, no pet.). If the relevant undisputed evidence negates jurisdiction, a plea to the jurisdiction must be granted. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). In some instances, however, a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts that go beyond the pleadings. *Holland*, 221 S.W.3d at 643; *see also Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. But the court should confine itself to the evidence relevant to those jurisdictional issues. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *Dahl ex rel. Dahl*, 92 S.W.3d at 860. A plea should not be granted if there is a fact issue as to the

court's jurisdiction. *Holland,* 221 S.W.3d at 643.

## B. Sovereign Immunity and Inverse Condemnation Claims

 Absent an express waiver of sovereign immunity, the State is presumed immune from suit. *Holland,* 221 S.W.3d at 643; *State v. Shumake,* 199 S.W.3d 279, 283 (Tex.2006); *Fed Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997). Sovereign immunity includes two distinct principles, immunity from suit and immunity from liability. *Tex. Dept. Of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex. 2004). While immunity from liability is an affirmative defense, immunity from suit deprives a court of subject-matter jurisdiction. *Id.*

 Sovereign immunity, however, is waived pursuant to the takings clause of Article I, section 17 of the Texas Constitution. *See Holland,* 221 S.W.3d at 643; *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex.2001); *Dahl,* 92 S.W.3d at 862. The takings clause provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. Art. I, ' 17. To establish a takings claim under Article I, section 17, the claimant must show that a governmental actor acted: (1) intentionally; (2) took or damaged property; and (3) did so for a public use. *Holland,* 221 S.W.3d at 643; *Gen. Servs. Comm'n,* 39 S.W.3d at 598. A condemnation is the procedure by which the State compels the transfer of property, from a private owner, for public use, and compensates that owner. *A.C. Aukerman Co. v. State,* 902 S.W.2d 576, (Tex.App.-Houston [1st Dist.] 1995, writ denied). Inverse condemnation, by contrast, occurs when the owner of the property, alleging the State took the property without proper process

or proceedings, seeks compensation. *City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643, 646 (Tex.1971). In order for there to be a taking, the plaintiff must have a compensable interest in the property at issue. *Fort Worth Concrete Co. v. State,* 416 S.W.2d 518, 521–523 (Tex.App.-Fort Worth 1967, writ ref'd n.r.e.). Whether the particular facts are sufficient to constitute a taking is a question of law for the court. *Gen. Servs. Comm'n,* 39 S.W.3d at 598.

 A property owner cannot have a valid inverse condemnation claim if the property at issue was the subject of a previous, proper condemnation or sovereign domain action. *Dahl,* 92 S.W.3d at 861. If the appellant's pleadings demonstrate that his inverse condemnation claim covers either the identical property lawfully condemned by the State, or an interest not recognized as separate from that property, he has no valid inverse condemnation claim, and sovereign immunity bars the suit. *See Dahl ex rel. Dahl,* 92 S.W.3d at 861. When the inverse condemnation claim is defective, the State prevails on a claim of sovereign immunity. *See Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 645–46 (Tex.2004); *Gen. Servs. Comm'n,* 39 S.W.3d at 598; *Dahl,* 92 S.W.3d at 862.

## C. Fee Estate and Easement

 A fee simple absolute title to land gives the owner the right to use the land in any way not hurtful to others. *Calcasieu Lumber Co. v. Harris,* 77 Tex. 18, 13 S.W. 453, 454 (1890); *Southtex 66 Pipeline Co., Ltd. v. Spoor,* 238 S.W.3d 538, 547 (Tex.App.-Houston [14th Dist.], 2007, no pet.). By contrast, an easement is a nonpossessory interest, though it authorizes its holder to use the property for a particular purpose. *Marcus Cable Associates, L.P. v. Krohn,* 90 S.W.3d 697, 700 (Tex.2002). While establishment of an

easement, in general terms, implies a grant of unlimited reasonable use as is reasonably necessary and convenient, *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974), the fee owner retains title to the land and all that is ordinarily considered part of that land. *Brunson v, State*, 418 S.W.2d 504, 506 (Tex.1967).

▪ In interpreting and evaluating an express easement, we apply the basic principles of contract construction. *Marcus Cable Associates, L.P.*, 90 S.W.3d at 700. "When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning." *Id.* at 701. When an easement is given, nothing passes by implication, and it is unnecessary for the grantor to make any reservation in the grant to protect his interests in the land, for "what he does not covey, he still retains." *Id.* at 701 (*quoting City of Pasadena v. California–Michigan Land & Water Co.*, 17 Cal.2d 576, 579, 110 P.2d 983 (1941)).

## III. Analysis of Brownlows' Appeal

▪ On April 14, 2000, the State sought a condemnation in fee simple for the 12.146 acres of land owned by the Brownlows. On December 13, 2002 the parties entered an agreement by which the State obtained a permanent easement on the property "for the purpose of opening, constructing, and maintaining a detention facility in, over, and across such tract of land ... with the rights at all times of ingress, egress, and regress in over on and across, such tract of land for the purposes of making additions to, improvements on, and repairs to said detention facility or an

part thereof...." The Brownlow's received $55,000.00 in payment thereof. This easement was to create a detention facility to capture rainwater displaced by the widening of Highway 35, which required displacement of 87,544 cubic meters of dirt. The Agreed Judgment was the result of negotiation between the parties, and the payment was for an easement alone.[1]

The Brownlows contend that they were unaware, and had not agreed, that soil would be removed from their property in order to create the detention facility. They contend that because no fee interest was transferred to the State at any time the State had no right to take the soil and use it for another purpose without additional compensation. They argue that while the State obtained the right to build and maintain a detention facility, it did not acquire the right to take soil from their land. As they point out, the Agreed Judgment says nothing about transferring ownership to the State of any soil or granting the State any right to carry away displaced soil. In the absence of any ambiguity, the contract is clear on this point. *See Marcus Cable Associates, L.P.*, 90 S.W.3d at 700–01.[2]

▪ The State responds that when it possess an easement over and upon property to build and maintain a detention facility, it has, by implication, the right to remove the soil necessary to that purpose and the right to use that soil elsewhere without the permission of, or compensation to, the fee owner of the estate, citing to *City of La Grange v. Brown*, 161 S.W. 8

---

1. The Agreed Judgment was accompanied by a construction plan sheet, initialed by Brownlow's attorney, showing the cut volume required to create the 87,544 cubic meter retention pond.

2. We find no ambiguity in this contract, but had we found an ambiguity, because the State

provided the map (exhibit A, attached to the contract and incorporated by reference) upon which it relies for the contention that the removal of 87, 544 was implicit (impliedly *from the premises*), the ambiguity would be construed against it.

(Tex.App. Austin 1913, writ ref'd). The State's reliance upon *City of LaGrange,* however, is misplaced. Insofar as the *City of LaGrange* is distinguishable, applying to those cases in which the State comes into incidental possession of soil while grading a highway, it may remain good law.[3] But to the extent that our opinion here contradicts this 1913, intermediate appellate case from Austin, we disagree with its holding. In this case the State actively negotiated and procured an easement for the single purpose of building a water detention facility, but then proceeded to remove thousands of cubic meters of soil from that location for a purpose unrelated to the construction of the detention facility. While it may be "reasonably necessary" for the state to displace the soil to dig the detention facility, the state provided no testimony or other evidence that it was reasonably necessary for it to cart off an enormous amount of soil to another location not owned by the Brownlows and use it for its own purposes. *Coleman v. Forister,* 514 S.W.2d 899, 903 (Tex.1974) (an easement holder has the right to do what is *reasonably necessary* to carry out the intent of the easement)(emphasis added). This court takes judicial note that in the marketplace today soil is a valuable commodity.[4] Having bargained only for an easement, the State is not entitled to ownership of the extracted soil. The Brownlows correctly contend that the State paid only for an easement to build a detention facility, and we find that this is exactly what it purchased. To grant it more, by implication, would be contrary to the express terms of the Agreed Judgment. A party to a contract has a right to rely on the language of the contract, and in the case of a grant of easement, the right to trust that nothing passes by implication. *Marcus Cable Associates, L.P.,* 90 S.W.3d at 700–01.

## IV. Conclusion

Because the soil removed for the purpose of constructing the detention facility was neither subject to the initial condemnation proceedings nor included within the Agreed Judgment, it remains the property of the fee owner. The Brownlows have sufficiently demonstrated that they have suffered damage to, or loss of, property and hence have a valid inverse condemnation claim. The State had a permanent easement "for the purpose of opening, constructing, and maintaining a detention/mitigation facility in, *over, and across* the tract of land for the purpose of making *additions to, improvements on, and repairs to* said detention facility or an part thereof ..." (emphasis added). It had a license to use the Brownlow's property only for the purpose stated, not a license to take a valuable commodity and appropriate it to its own uses elsewhere. As such, the State's sovereign immunity is waived.

Accordingly, the judgment of the trial court is reversed and this case is remanded to the trial court for a trial on the merits.

---

3. It should also be noted that the permanent easement discussed in *LaGrange* was not subject to an explicit contract, the Agreed Judgment, as in the case before us.

4. The State, no novice to construction projects, knows the value of dirt. It is also quite likely, though this case has not progressed to the point of determining the value of the dirt removed, that it exceeds the $55,000.00 paid the Brownlows for the permanent easement.