Opinion issued July 29, 2010



In The

Court of
Appeals

For The

First
District of Texas

————————————

NO. 01-09-00179-CV

———————————

William Reaves and
Linda Reaves, Appellants

V.

Sheldon Lindsay and Elaine Lindsay,
Appellees



 



 

On Appeal from the 155th District Court

 

Austin County, Texas



Trial Court Case No.
2006V-0037

 



 

O P I N I O N

Appellants, William Reaves and Linda
Reaves, appeal the trial court’s grant of summary judgment in favor of
Appellees, Sheldon Lindsay and Elaine Lindsay, in a dispute over an express
easement.  Appellants argue that the
trial court erred by determining that the easement prevented the installation
of gates or cattle guards and by not determining that the installation of gates
or cattle guards would not unreasonably interfere with the use of the
easement.  Alternatively, Appellants
argue that the issue of whether installing gates or cattle guards would
unreasonably interfere with the use of the easement is a question of fact that
cannot be resolved by summary judgment. 
In a cross-point, Appellees argue that Appellants do not own an interest
in the land that is controlled by the easement.

We reverse and remand.

Background

All the portions of land related to this suit were once
owned by Everett Luhn.  This original
property is located in Austin County, Texas and abuts F.M. Road 2502.  Luhn sold the portion of property that is now
owned by the Linsdays in 2000.  This
portion of land was not located on a public road.  Accordingly, Luhn included in the sale of
property an easement from the Lindsays’ property to F.M. Road 2502.  The easement is roughly 30 feet wide and
1,300 feet long.  The language granting
the express easement provides:

There is hereby granted and conveyed to the Grantee,
their heirs and assigns, a non-exclusive perpetual right-of-way and easement
for the purpose of maintaining and keeping in repair a roadway and for the use,
liberty, privilege and easement of passing and repassing in common with
Grantor, his heirs and assigns, and others, over and across the following
described tract of land.

Luhn sold the remainder of his property to a third-party,
who then sold a portion of that property to the Reaveses in 2005.  The land subject to the easement is part of
the property bought by the Reaveses.  The
easement does not divide the Reaveses’ property.  Instead, it runs along the northwestern
border of the Reaveses’ property.

The Lindsays’ property is fenced with a gate providing
access to the easement.  In 2006, the
Reaveses sought to fence their property including either (1) installing a gate
where the easement abutted F.M. Road 2502 or (2) installing a cattle guard
where the easement abutted F.M. Road 2502 and installing a gate to the side of
the cattle guard to allow passage of horses and pedestrians.  The purpose of the fence and the proposed
gates and cattle guard was to allow the Reaveses to raise cattle on their
property.  The Lindsays protested both
options, insisting that the easement entitled them to access to F.M. Road 2502
without any gates or cattle guards.

The Lindsays brought suit seeking injunctive relief and
declaratory action to prevent the installation of any gates or cattle guards
anywhere along the easement.  The
Reaveses brought a counterclaim seeking declaratory action to establish their
right to install gates and cattle guards along the easement.  Both parties filed motions for summary
judgment.  On February 3, 2009, the trial
court granted the Lindsays’ motion and denied the Reaveses’ motion, ruling that
the easement must be free of any gates or cattle guards.  The Reaveses appealed.

Summary Judgment

In their first two points of error, the Reaveses argue
that the trial court erred by ruling that, as a matter of law, they were
prevented from installing gates or cattle guards on the easement.  Alternatively, the Reaveses argue that the
issue of whether installing gates or cattle guards would unreasonably interfere
with the use of the easement is a question of fact that cannot be resolved by
summary judgment.  In a cross-point, the
Lindsays argue that the Reaveses do not own an interest in the land that is
controlled by the easement.

A.              
Standard of Review

We review a trial court’s granting of a summary judgments de novo.  Provident Life and Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  Summary judgment is properly granted only when a movant
establishes that there are no genuine issues of material fact and that he is
entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  As must the trial court, we
must indulge every reasonable inference in favor of the non-movant, take all
evidence favorable to the non-movant as true, and resolve any doubts in favor
of the non-movant.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).  When an order granting
summary judgment does not specify the grounds upon which the trial court ruled,
we must affirm if any of the summary judgment grounds is meritorious.  Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995).

Each party must carry its own burden, however, both as
movant and in response to the other party’s motion, as non-movant.  State
v. Japage P’ship, 80 S.W.3d 618, 620 (Tex. App.—Houston [1st Dist.] 2002,
pet. denied) (citing CU Lloyd’s v. Feldman, 977 S.W.2d 568, 569 (Tex.
1998)).  When, as here, both parties file motions for summary judgment and
the trial court grants one motion and denies the other, we determine all
presented questions and may render a different judgment if appropriate.  SAS
Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005); CU
Lloyd’s, 977 S.W.2d at 569.

B.              
Scope of the easement

In their motion for summary judgment, the Lindsays
presented four grounds for the trial court to determine that the Reaveses could
not install gates or cattle guards on the easement: (1) the Reaveses did not
own the property subject to the easement; (2) the express easement prevented
the Reaveses from installing gates or cattle guards; (3) an implied easement
prevented the Reaveses from installing gates or cattle guards; and (4) no gates
or cattle guards had been erected since the creation of the easement.  In its judgment, the trial court determined
that the Reaveses did own the property that was subject to the easement but did
not indicate which of the remaining three arguments it was relying on to
determine that no gates or cattle guards could be installed on the
easement.  We must affirm if any of the
grounds not expressly rejected by the trial court is meritorious.  Star-Telegram, 915 S.W.2d at 473.

1.                
Express Easement

The first ground the Lindsays presented to the trial court
for granting summary judgment was that the express easement requires the road
to be unobstructed.  The language that
created the easement held by the Lindsays provides:

There is hereby granted and conveyed to the Grantee,
their heirs and assigns, a non-exclusive perpetual right-of-way and easement
for the purpose of maintaining and keeping in repair a roadway and for the use,
liberty, privilege and easement of passing and repassing in common with Grantor,
his heirs and assigns, and others, over and across the following described
tract of land.

An easement is a non-possessory interest in another’s
property that authorizes its holder to use that property for a particular
purpose.  Marcus Cable Assocs., L.P.
v. Krohn, 90 S.W.3d 697, 700 (Tex. 2002). 
When considering the rights and constraints under an express easement, a
court first must consider the language of the easement itself.  CenterPoint Energy Houston Elec., LLC v.
Bluebonnet Drive, Ltd., 264 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.]
2008, pet. denied).  In doing so, we
apply basic principles of contract construction and interpretation.  Marcus Cable, 90 S.W.3d at 700 (citing
DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 103 (Tex. 1999)).

The intent expressed in the grant by the contracting
parties determines the scope of the easement. Id. at 700–01.  Unless the language is ambiguous, we rely
solely on the written instrument.  Koelsch
v. Indus. Gas Supply Corp., 132 S.W.3d 494, 498 (Tex. App.—Houston [1st
Dist.] 2004, pet. denied).  The express
terms in the easement are given their generally accepted meaning.  Marcus Cable, 90 S.W.3d at
701.  In interpreting the rights conveyed
by an easement, we consider all of the terms used, in order to give effect to
all provisions. CenterPoint Energy, 264 S.W.3d at 388.

The easement does not specifically address the use of
gates or cattle guards.  Instead, the
Lindsays argue that the terms “liberty” and “roadway” in the easement grant
them the right to the easement without gates, cattle guards, and other
obstructions.

The grant’s terms are not specifically defined so we must
give them their plain, ordinary, and generally accepted meaning.  Marcus Cable, 90 S.W.3d at 701 (citing
DeWitt, 1 S.W.3d at 101).  Liberty
is defined as the “freedom from arbitrary or undue external restraint, esp. by
a government.”  Black’s Law Dictionary 743 (7th ed. 1999).  Liberty is also defined as “the state of
being free within society from oppressive restrictions imposed by authority on
one’s way of life, behavior, or political views.” The New Oxford American Dictionary 976 (2d ed. 2005).  These definitions suggest that liberty is a
person’s right or freedom to act without arbitrary or oppressive
restraint.  It is not a right to act
without any restraint whatsoever.

We cannot hold that liberty, as a matter of law, means the
right to ingress and egress free of gates, cattle guards, or other obstructions
as suggested by the Lindsays.  The
Lindsays’ interpretation extends beyond the plain and ordinary meaning of the
term, which we cannot do in construing the express terms of the easement.  Furthermore, there is no evidence in the
summary judgment record that suggests that installing gates or cattle guards
would be arbitrary or oppressive.

The Lindsays also claim that the term “roadway” in the
easement grant supports a conclusion that the easement, as a matter of law,
must be open and unobstructed.  The
Lindsays argue that the inclusion of the word “other” in the easement’s grant
of the right to pass and repass “in common with Grantor, his heirs and assigns,
and others” suggests that the road was meant to be open to the public and,
accordingly, free from obstructions.  The
Lindsays rely on Burns for authority for this argument.  Burns v. McDaniel, 158 S.W.2d 826
(Tex. Civ. App.—Eastland 1942, no writ).

In Burns, the original grantor sold a portion of
his property reserving the area of land containing a road to be “kept open as a
pass-way for the traveling public as well as for the grantors into and upon the
lands adjacent to and eastward from the parcel of land herein conveyed.”  Id. at 826.  The grantee subsequently gated and locked the
entryway to the road.  Id.  The court held that the language of the deed
and other considerations compelled the conclusion that the lock on the gate had
to be removed.  Id. at 827.  The court was also inclined to believe that
the gate should be removed, but the record was not developed enough to make
this determination.  Id.  The court remanded to the trial court for
further consideration.  Id.  

We do not agree with the Lindsays that the use of the word
“other” in the easement in this case compels the same conclusion as the use of
the words to be “kept open as a pass-way for the traveling public” in Burns.  The land was not dedicated as a public
roadway.  See Tex. Transp. Code Ann.
§ 281.003(a) (Vernon 1999) (requiring dedication to be explicit and
voluntary grant and to be communicated to county commissioners court).  We read the language of the easement to
acknowledge that people other than the actual property owners may occasionally
use the road.  To argue that all roads
that are not used exclusively by their owners are public roads would eviscerate
the concept of private roads.

We construe the language of an easement as a matter of law
when an easement is susceptible to only one reasonable, definite interpretation
after applying established rules of contract construction and
interpretation.  Marcus Cable, 90
S.W.3d at 703.  We hold that the language
of the easement does not address the issue of whether gates and cattle guards
can be installed on the easement.

This does not end the inquiry, however.  When an express easement is stated in general
terms, the easement “implies a grant of unlimited reasonable use such as is
reasonably necessary and convenient and as little burdensome as possible to the
servient owner.”  Coleman v. Forister,
514 S.W.2d 899, 903 (Tex. 1974).  No
interest in real property passes by implication as incidental to a grant except
what is reasonably necessary to the fair enjoyment of the property.  Whaley v. Cent. Church of Christ of
Pearland, 227 S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  The Reaveses argue that this is a balancing
test, and we agree.  The test for this
case, then, becomes whether the Lindsays’ claim to a right to a roadway without
any gates or cattle guards is reasonably necessary and convenient and whether
this claimed right puts as little burden as possible on the Reaveses.

Neither of the parties presented much evidence relevant to
this balancing test in their motions for summary judgment.  The Lindsays correctly argue that they have
the right to use the entire easement as a roadway.  Williams v. Thompson, 152 Tex. 270,
281, 256 S.W.2d 399, 405 (1952).  The
Reaveses state that they intend to use their land to raise cattle, but do not
explain why it would be too great of a burden to build a fence and gate
alongside the easement tract rather than across the easement considering that
their right to use the portion of land subject to the easement for raising
cattle is secondary to the Lindsays’ right to use it as a roadway.

Additionally, the Lindsays argue that gates and cattle
guards would be too much of a burden on them. 
The Reaveses point out, however, that there is a gate bordering the
Lindsays’ property and the easement. 
This leaves unanswered the question of why a fence on their land is
appropriate while gates or cattle guards on the easement would be
inappropriate.[1]

As a general rule, the questions of whether the use of an
easement by the dominant estate is reasonably necessary and convenient and of
whether the use is as little burdensome as possible on the servient estate are
questions of fact for the trial court or jury. 
Gillett v. Van Horne, 36 S.W.2d 305, 307 (Tex. Civ. App.—El Paso
1931, writ dism’d); see also Forister v. Coleman, 538 S.W.2d 14, 15–16
(Tex. Civ. App.—Austin 1976, writ ref’d) (holding question of what is
reasonable access across walkway easement is fact issue to be determined by
jury); Carleton v. Dierks, 203 S.W.2d 552, 556 (Tex. Civ. App.—Austin
1947, writ ref’d) (holding question whether locking of gates and furnishing
plaintiffs with keys was unreasonable interference with use of roadway by plaintiffs
was fact issue for trier of fact to resolve). 
We hold that the record was underdeveloped on the issue of whether an
easement without gates or cattle guards is reasonably necessary and convenient
for the Lindsays while putting as little burden as possible on the
Reaveses.  Accordingly, this could not
have been a basis for summary judgment for either party.

2.                
Implied Easement

The second ground the Lindsays presented to the trial
court for granting summary judgment was that an implied easement requires the
road to be unobstructed.  The Lindsays
argue, “The nature and condition of an easement at the time the easement is
granted controls how it may later be used.” 
This is an incomplete statement of the law.

In order to establish an easement by implied grant, the
party asserting its existence must show that (1) there was unity of ownership
between the dominant and servient estate when the two were severed; (2) at the
time the dominant estate was granted, there was apparent use of the easement;
(3) use of the easement before the severance was continuous, indicating an
intent by the owners to pass the easement by grant with the dominant estate;
and (4) the easement must be reasonably necessary to the use and enjoyment of
the dominant estate.  Houston
Bellaire, Ltd. v. TCP LB Portfolio I, L.P., 981 S.W.2d 916, 919 (Tex.
App.—Houston [1st Dist.] 1998, no pet.).

The Lindsays asserted in their motion for summary judgment
that the easement did not have any gates, cattle guards, or fences at the time
it was created in 2000.  They go on to
assert that, for the past 50 years, no gates, cattle guards, or fences existed
around the area that is now the easement. 
Both of these statements lack any support in the evidence they relied on
to support their motion.  The only evidence
of gates, cattle guards, or fences around the easement comes from the affidavit
of Sheldon Lindsay.  In it he avers that
there were no gates, cattle guards, or fences around the easement when he
bought it in 2004.  Proof of the state of
the easement in 2004 is no proof of its state in 2000 let alone the past 50
years.  

The Lindsays also cite the deed from Luhn that created the
express easement as proof.  The deed
makes no mention of gates, fences, or cattle guards.  This is not proof, however, that none
existed.  Accordingly, there is no
evidence to establish the second or third elements of an implied easement,
which require proof of the state and use of the property at the time of the
severance.  See id.  

Furthermore, there is no evidence in the record that a
road without gates or cattle guards is reasonably necessary to the use and enjoyment
of the dominant estate.  The Lindsays
argue that their age makes it difficult to mount and dismount horses without
the aid of a riding block and that they would not be able to open or close the
gates while mounted.  We do not need to
determine whether the age and health of the easement owner can be a
consideration in determining whether an implied easement has been created
because the Lindsays were not the purchasers of the easement at the time it was
created.  Accordingly, this cannot be a
basis for arguing that an implied easement was created at the time the dominant
and servient estates were severed.  See id. 


We hold that there is insufficient evidence in the record
to support a determination that an implied easement existed that prevents the
installation of gates or cattle guards along the easement.  Accordingly, this could not have been a basis
for granting summary judgment in favor of the Lindsays.

3.                
Use of the easement after grant

The third ground the Lindsays presented to the trial court
for granting summary judgment was that the easement has been free of gates and
cattle guards since the creation of the easement.  The Lindsays do not explain how the use of the
easement after its creation affects the application or scope of the
easement.  The Lindsays cite to this
Court’s opinion in Unger as authority. 
Unger v. Landry, No. 01-03-01331-CV, 2005 WL 21396 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied) (mem. op.).  

In Unger, a 30-foot wide easement had been created
along the edge of a property.  Id.
at *1.  A subsequent owner of that
property built a fence encroaching 13 to 17 feet into the easement and
relocated a drainage culvert onto the easement. 
Id.  In reviewing the scope
of the easement, we looked at the language of the express easement.  Id. at *3.  We did not consider any events after the
easement was created.  Id.  The only events after the creation of the
easement that were discussed were those challenged by the parties.  Id. 


While events occurring after the creation of an easement
may be considered to allow for changes in the “manner, frequency, and intensity
of an easement’s use . . . to accommodate technological development,” those are
not the facts of this case.  Marcus
Cable, 90 S.W.3d at 701–02. 
Otherwise, the only pertinent facts in determining the scope of an
express or implied easement are the facts occurring up to the time of the
creation of the easement.  See Holmstrom v. Lee, 26 S.W.3d 526,
531–32 (Tex. App.—Austin 2000, no pet.) (holding intention of parties creating
easement is of primary importance); Houston Bellaire, 981 S.W.2d at 919
(holding facts occurring at time of creation are relevant).  Accordingly, this could not have been a basis
for granting summary judgment in favor of the Lindsays.

We sustain the Reaveses’ first point of error arguing that
the trial court erred in determining that the evidence showed as a matter of
law that gates or cattle guards could not be installed on the easement.  We overrule the Reaveses’ second point of
error arguing that the trial court should have determined that the evidence
showed as a matter of law that gates or cattle guards could be installed on the
easement.  We sustain the Reaveses’ third
point of error that summary judgment was inappropriate because fact issues
remain that prevent the rendition of summary judgment.

C.              
Ownership of the Land Subject to the Easement

In a cross-point, the Lindsays argue that summary judgment
was appropriate by asserting the land subject to the easement was not owned by
the Reaveses.  In the judgment, the trial
court specifically determined that the land subject to the easement was owned
by the Reaveses.  This issue was
presented to the trial court in the Lindsays’ motion for summary judgment and
was properly raised as a cross-point.  See
Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996) (holding
courts must consider cross-points asserting grounds specifically denied by
trial court).

Both the Reaveses’ and the Lindsays’ properties were once
part of a larger tract of land owned by Everett Luhn.  The first portion of his property that Luhn
sold was the portion of property now owned by the Lindsays.  Included in that sale was an easement across
a portion of Luhn’s remaining property providing access from the Lindsays’
property to F.M. Road 2502.

Luhn sold the remainder of his property to a third party,
who then sold a portion of that property to the Reaveses.  The warranty deed in the sale of the property
to the Reaveses provides:

This conveyance is made by Grantors and accepted
by Grantees subject to the following exceptions from this conveyance and
warranty, but only to the extent the same are valid and subsisting and relate
to the Property:

 

(a) That certain non-exclusive perpetual right of
way and easement containing 0.915 acre of land as described in Deed from
Everett A. A. Luhn to Jewel M. Atkerson, et al, dated July 28, 2000, filed
August 7, 2000, recorded in File No. 005268, Official Records of Austin County,
Texas.

The easement mentioned in this portion of the deed is
the easement that is the subject of this suit. 
The Lindsays cite this language in the deed as evidence of their
argument that the Reaveses do not own “the servient estate under the easement.”

An easement is a non-possessory property interest that
authorizes its holder to use the property of another for a particular purpose.  Brownlow v. State, 251 S.W.3d 756, 760–61
(Tex. App.—Houston [14th Dist.] 2008, pet. granted) (citing Marcus Cable,
90 S.W.3d at 700).  An easement does not
convey title to property.  Stephen F.
Austin State Univ. v. Flynn, 228 S.W.3d 653, 658 (Tex. 2007).  A general easement implies a grant of
unlimited reasonable use insofar as that use is reasonably necessary and
convenient.  Brownlow, 251 S.W.3d at
760–61 (citing Coleman, 514 S.W.2d at 903).  The owner of land subject to an easement
otherwise retains title to the land and all that is ordinarily considered part
of that land.  Id. at 761 (citing Brunson
v. State, 418 S.W.2d 504, 506 (Tex. 1967)).

The easement in dispute is a right to maintain a road and
a non-exclusive right-of-way along that road. 
All other rights and privileges that were part of the title for the
portion of land subject to the easement were retained by Luhn.  That title passed from Luhn to a third party
and then from that third party to the Reaveses. 
The only thing excepted from conveyance to the Reaveses in the deed was
the easement now held by the Lindsays. 
Just as grant of an easement does not convey title, the exception of an
easement from a grant does not exclude the conveyance of title.  See Flynn, 228 S.W.3d at 658 (holding
easement does not convey title to property). 
Accordingly, the trial court correctly determined that, as a matter of
law, the Reaveses own title to the portion of the property that is subject to
the easement.

We overrule the Lindsays’ cross-point.

Conclusion

None of the parties established that they were entitled to
judgment as a matter of law on the issue of whether gates or cattle guards
could be installed on the portion of property subject to the easement.  We reverse the trial court’s rendition of
summary judgment on this issue and remand the cause to the trial court for
further proceedings.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Keyes, Hanks, and Higley.

 











[1]        We do not assert that this is an
irreconcilable contradiction.  It is only
a fact issue that was not addressed in the motions for summary judgment.  Furthermore, we do not assert that these are
the only fact issues that can or must be weighed.  The facts relevant to this balancing test are
case-specific and additional matters may be identified and argued by the parties.