**Opinion issued December 5, 2013**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-12-00993-CV

———————————

**SHELDON LINDSAY AND ELAINE LINDSAY, Appellants**

**V.**

**WILLIAM REAVES AND LINDA REAVES, Appellees**

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Case No. 2006V-0037**

---

### MEMORANDUM OPINION

A jury determined that William and Linda Reaves could place a fence and gates on their property along the easement held by Sheldon and Elaine Lindsay. In two issues, the Lindsays argue the jury's determination was legally insufficient because an implied easement prohibited the construction of the fence and gates.

We affirm.

## Background

The Reaveses own property along F.M. Road 2502 in Austin County. The Lindsays own adjoining property and access F.M. Road 2502 through an easement along the Reaveses' property. Both properties were once owned by Everett Luhn, and the easement was created when he divided and sold the properties. In 2006, the Reaveses sought to fence and gate their property, including the easement, for the purpose of raising cattle.

The Lindsays brought suit, seeking a declaratory judgment to prevent the installation of fences and gates along the easement. The Reaveses counterclaimed, seeking a declaratory judgment establishing their right to install gates and fences. The parties filed cross-motions for summary judgment, disputing whether an express or implied easement prevented the installation of the fence and gates. The trial court ruled in favor of the Lindsays and the Reaveses appealed. On appeal, we held that a fact issue existed for both the express and implied easement theories.[1]

---

[1] *Reaves v. Lindsay*, 326 S.W.3d 276, 282–83 (Tex. App.—Houston [1st Dist.] 2010, no pet.)

We remanded the case, and the matter was brought to trial before a jury. The jury determined that the Reaveses were permitted to construct fences and gates along the easement. The Lindsays now appeal.

## Legal Sufficiency

In two issues, the Lindsays argue the jury's determination was legally insufficient because an implied easement prohibited the construction of the fence and gates. In their first issue, they argue the trial court should have granted their motion for directed verdict. In their second issue, they argue the trial court should have granted their motion for judgment notwithstanding the verdict (JNOV). The Reavses argue that the Lindsays have waived this issue because the jury was never asked to consider whether an implied easement prevented the construction of the fence and gates.

### A.   Standard of Review

We review a trial court's ruling on a motion for directed verdict or a motion for judgment notwithstanding the verdict under a legal-sufficiency standard. *City of Keller v. Wilson,* 168 S.W.3d 802, 823–24 (Tex. 2005); *City of Houston v. Proler*, 373 S.W.3d 748, 754 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We must determine whether there is any evidence of probative force to raise a fact issue on the question presented. *Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 684 (Tex. 2004); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 21

3

(Tex. App.—Houston [1st Dist.] 2009, pet. denied).  In reviewing the sufficiency of the evidence in support of the judgment, we "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."  *City of Keller*, 168 S.W.3d at 827.  "A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment."  *B & W Supply*, 305 S.W.3d at 21.

A trial court may grant a motion for JNOV if a directed verdict would have been proper, and it may disregard any jury finding on a question that has no support in the evidence.  TEX. R. CIV. P. 301.  In reviewing the rendition of JNOV, the reviewing court must determine whether there is any evidence upon which the jury could have made the finding.  *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003).

## B.    Waiver

The Lindsays sought to prevent the construction of the fence and gates under two theories: (1) they were prohibited under the express easement, and (2) they were prohibited under the implied easement.  In our earlier opinion, we held, "When an express easement is stated in general terms, the easement 'implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner.'"  *Reaves v. Lindsay*,

4

326 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting

*Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)). We also held,

> In order to establish an easement by implied grant, the party asserting
> its existence must show that (1) there was unity of ownership between
> the dominant and servient estate when the two were severed; (2) at the
> time the dominant estate was granted, there was apparent use of the
> easement; (3) use of the easement before the severance was
> continuous, indicating an intent by the owners to pass the easement by
> grant with the dominant estate; and (4) the easement must be
> reasonably necessary to the use and enjoyment of the dominant estate.

*Id.* at 283 (citing *Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P.*, 981 S.W.2d

916, 919 (Tex. App.—Houston [1st Dist.] 1998, no pet.)).

While these inquiries are similar, they focus on different things. Under an

express easement theory, the focus is on the terms of the express easement and a

further implied use is created as is reasonably necessary and convenient *for that

express easement*. *Id.* at 282. In contrast, under an implied easement theory, the

focus is on an apparent use that is reasonably necessary to the use and enjoyment

of the *dominant estate*. *Id.* at 283.

The only matter submitted to the jury was whether the express easement

allowed or prohibited the construction of the fence and gates along the easement.

The jury instructions included the language of the express easement and asked the

jury to consider the easement's language in determining whether the fence and

gates could be constructed. The jury was not asked to make any determination on

5

any of the elements for implied easement. The Reaveses argue this establishes that the Lindsays have waived the issue.

Pursuant to Rule 279 of the Texas Rules of Civil Procedure, "[a] claim is not waived . . . when the evidence conclusively establishes the elements of the offense, even if none of the elements of the offense is submitted to the jury for consideration." *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.— Houston [1st Dist.] 2008, pet. denied) (citing TEX. R. CIV. P. 279). "Jurors are not free to reach a verdict contrary to [the] evidence; indeed uncontroverted issues need not be submitted to a jury at all." *City of Keller*, 168 S.W.3d at 814–15. "Thus, when the evidence conclusively establishes a claim, the claim may be part of the judgment, even if no jury question on the claim was submitted." *VR Elec., Inc.*, 276 S.W.3d at 677.

Here, the Lindsays moved for a directed verdict and for a JNOV, claiming that they had established as a matter of law that the fence and gates were prohibited under an implied easement. This was sufficient to preserve their legal-sufficiency arguments on appeal. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991).

## C.    Analysis

To prevail on their implied easement claim, the Lindsays were required to establish that (1) there was unity of ownership between the dominant and servient estate when the two were severed; (2) at the time the dominant estate was granted,

there was apparent use of the easement; (3) use of the easement before the severance was continuous, indicating an intent by the owners to pass the easement by grant with the dominant estate; and (4) the easement must have been reasonably necessary to the use and enjoyment of the dominant estate. *Reaves*, 326 S.W.3d at 283.

> Prior to trial, the parties stipulated to the following:
>
> 2. <u>Unity of Ownership</u>. There was unity of ownership between the Luhn Estate [the relevant portion now owned by the Reaveses] and the Atkerson Estate [now owned by the Lindsays] when the Atkerson Estate was severed from the Luhn Estate and the Easement was created.
>
> 3. <u>Use of Roadway at Time Created</u>. At the time and since the time, the Atkerson Estate was severed from the Luhn Estate, the easement has been used as a roadway, open and unobstructed without any gates or cattleguards.

The Lindsays rely on these stipulations along with the testimony of Della Naquin for their argument that their implied easement claim was established as a matter of law. Naquin testified that her mother and father-in-law had bought what is now the Lindsays' property. The express easement at issue was created with this sale. Naquin testified that, other than the gate and fence that separates the Lindsays property from the Reaveses property, there had never been any fence or gate along the easement. She also testified as follows:

> Q.     All right. And at that time, was the road necessary to get to the house?

7

A.     Yes.  That is the only way to get to it.

Even assuming an "apparent use of the easement" can be established by showing the absence of certain improvements, we hold that the record does not establish as a matter of law the existence of the implied easement the Lindsays assert.  The Lindsays argue that the implied easement prohibits fences, gates, or other obstructions being placed on or along the road.  They have presented no evidence, however, that an easement prohibiting fences or gates is "reasonably necessary to the use and enjoyment of the dominant estate."  *Reaves*, 326 S.W.3d at 283.  Naquin testified that the *road* was necessary for the use and enjoyment of the dominant estate.  That is not in dispute, however.  The road is part of the express easement, not the implied easement the Lindsays claim to exist.  Naquin did not testify that the lack of fences or gates was necessary for the use and the enjoyment of her parents' property.

We overrule the Lindsays' two issues.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

8