

# NUMBER 13-17-00027-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SASHIDHAR GANTA AND
NALINI GANTA,                                                           Appellants,

v.

SEAN WILLIAMS,                                                           Appellee.

**On appeal from the 201st District Court
of Travis County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Hinojosa
Memorandum Opinion by Justice Benavides**

Appellants Sashidhar and Nalini Ganta (Gantas) seek reversal of the trial court's

denial of relief in their declaratory judgment suit to enforce the terms of an easement

against appellee Sean Williams. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West,

Westlaw 2017 through 1st C.S.). By four issues, the Gantas argue that: 1) the trial court

erred by allowing Williams to use the easement for vehicular access between

Tumbleweed Hills lot 7 and Marley Way in the Seven Oaks subdivision because the use is not authorized by the easement; 2) Williams should not be allowed to use a Marley Way address for his house on Tumbleweed Hills Lot 7; 3) Williams must have consent of the lot owners of Lots 11, 12, 22, and 23 before modifying the structure or design of the easement; and 4) the trial court erred by denying Gantas' request for attorney's fees, expenses, and costs.   We affirm.

## I.   BACKGROUND[1]

This property dispute arises from an easement in the Seven Oaks subdivision that borders Tumbleweed Hills, a neighboring subdivision, in Travis County.[2]   Tumbleweed Hills predated Seven Oaks and in general had smaller lots and fewer, less onerous deed restrictions.   For example, Seven Oaks requires a minimum of 4,200 square feet for any residence built within the subdivision; Tumbleweed Hills does not have such a requirement.   The developer of the portion of Seven Oaks at issue created a paver drive within the subdivision that connected the main street, Marley Way, to four lots, Lots 11, 12, 22, and 23.   Williams owns lots 11, 12, and 22.   The Gantas own Lot 23.   The easement reads:

> 2.01 Declarant [Bee Cave Oaks Development] hereby reserves a perpetual non-exclusive easement (the "Joint Access Easement") on, over, across and upon the Joint Access Easement Area; the Joint Access Easement shall be for the use and benefit of the Owners and their

---

[1] The facts recited are taken from the property documents, exhibits, and the testimony of Sashidhar Ganta and Williams during the temporary injunction hearing and bench trial.

[2] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case was transferred to this Court from the Third Court of Appeals in Austin.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).   Because this is a transfer case, we apply precedent of the Third Court of Appeals to the extent it differs from our own.   *See* TEX. R. APP. P. 41.3.

respective successors, assigns, family members, contractors, guests and invitees, for purposes of providing vehicular and pedestrian ingress and egress to and from (a) Marley Way, a public roadway, and (b) each Lot to the other Lots across the common boundary lines separating the Lots.   No Owner . . . shall interfere with, detract from, hinder or disrupt the use or enjoyment of the Joint Access Easement Area by any other Owner . . . .

Lots and Owner are defined terms.   The paver road crosses Lots 12, 22, and 23 on their western border with Tumbleweed Hills. The plat below shows Lot 23, which belongs to the Gantas, in shading and the easement is cross-hatched on Lots 12 and 23. At the time of trial, the paver road did not extend through Lot 22.   There is no fence separating Tumbleweed Hills from Seven Oaks.   Williams also owns Lot 7 in Tumbleweed Hill in addition to Lots 11, 12 and 22 in Seven Oaks.   Lot 7 is directly west of Lot 12 and extends northward and west adjacent to Lot 23.



EXHIBIT
11

In 2015, Williams informed the Gantas that he intended to build a house on Lot 7 in Seven Oaks and planned to use the paver driveway easement to access Lot 7. His proposed plans placed his front door (on Lot 7) facing the easement. Williams originally planned to have his front door less than five feet from the paver road and planned to use Lot 12 as his front yard. After unsuccessful discussions between the parties, the Gantas filed Plaintiffs' Original Petition and Application for Temporary and Permanent Injunction in June 2015 to prevent Williams from using the easement to access Lot 7.[3]

---

[3] The Gantas sought the following declarations:

4

After a hearing in which Ganta and Williams testified, the trial court granted a temporary injunction in favor of the Gantas that read as follows:

> IT IS FURTHER ORDERED that Defendant Sean Williams is enjoined from using, or authorizing the use of, the access Easement appurtenant to Lots 11, 12, 22, and 23 in the Seven Oaks subdivision in Travis County, Texas for (i) ingress to or egress from any property other than Seven Oaks Lots 11, 12, 22, and 23, other than for pedestrian ingress or egress by Defendant Sean Williams or his invitee, (ii) ingress to or egress from any lot located outside the Seven Oaks subdivision, other than for pedestrian ingress or egress by Defendant Sean Williams or his invitee, (iii) ingress to or egress from any lot located in the Tumbleweed Hills subdivision, other than for pedestrian ingress or egress by Defendant Sean Williams or his invitee, or (iv) modifying the structure or design of the access Easement appurtenant to Lots 11, 12, and 22 in the Seven Oaks subdivision in Travis County, Texas without the consent of the owners of Seven Oaks Lots 11, 12, 22, and 23 until further order of the Court.

Williams continued to build his house, but he no longer had any construction vehicles turn left from the easement onto Lot 7. Instead, construction vehicles were generally parked on Lot 12 or on the easement long enough to off-load materials onto Lot 7 by hand or materials were lifted from Lot 12 to Lot 7 using a crane. The Gantas also began construction on their house on Lot 23. They believed that Williams was flouting the temporary injunction and filed a motion for contempt.

Lot 7 in Tumbleweed Hills had access to the streets of Tumbleweed Hills from at least two areas of the lot. There is a long narrow unpaved strip of land that went west

---

• Defendant is prohibited from using or authorizing the use of the Easement for ingress to or egress from any property other than Seven Oaks Lots 11, 12, and 22;
• Defendant is prohibited from using or authorizing the use of the Easement for ingress to or egress from any property outside the Seven Oaks subdivision;
• Defendant is prohibited from using or authorizing the use of the Easement for ingress to or egress from any lot in the Tumbleweed Hills subdivision; and
• Defendant is prohibited from modifying the structure or design of the Easement without the consent of the owners of Seven Oaks Lots 11, 12, 22, and 23.

near the south end of Lot 7 and an unpaved section at the north end of Lot 7 that was shorter, but steep.   Lot 23 also had access to public roads other than from the easement; it had a long narrow strip along its western border that ran north to Olympus Drive.   That section was also unpaved and may be seen on Exhibit 11 reproduced herein.

At trial, the Gantas explained their objection to Williams's use of the easement. They believed he was attempting to convert his less expensive and less restricted lot in Tumbleweed Hill into a more valuable Seven Oaks property and his doing so would devalue their property.   In addition, the Gantas were concerned that Williams's design of his house close to the easement as if it was his private driveway bothered them every time they drove past the house.   Their third concern was the potential for expansion of the use of the easement by others within Tumbleweed Hills depending on how Williams continued to use Lot 7.

In support of their argument that Williams was trying to piggyback Lot 7 into Seven Oaks, the Gantas produced evidence that Williams had obtained a new address for the property that had been formerly known as 803 N. Tumbleweed Trail or 1100 Bowie Drive. Because Williams had never obtained street access for emergency vehicles onto either Tumbleweed Trail or Bowie, he was able to get an address of 608 Marley Way, Unit 2 approved by the City of Austin.   Lot 12 had an address of 608 Marley Way, Unit 1.   The Gantas' address would be 608 Marley Way, Unit 3.   The Gantas amended their petition to request injunctive relief as to Williams's use of a Marley Way address.

Williams argued that he was entitled to use the paver road on Lot 12 to access his property on Lot 7 because he owned both Lot 12 and Lot 7, not because there was an

6

easement. He did not use the easement across Lot 23 to access Lot 7.

During the multi-day bench trial, the trial court heard testimony from the Gantas regarding their observation of Williams's violations of the temporary injunction, admitted photographic evidence, heard testimony from Williams's and the Gantas' separate construction superintendents including evidence regarding the change in Williams's address which was approved by the City of Austin.

The trial court denied the Gantas' request for declaratory judgment, granted a prospective injunction against Williams from interfering with the Gantas' ability to access Lot 23, ordered Williams to pay $10,000 in sanctions for violating the temporary injunction, dissolved the temporary injunction, released the Gantas' cash bond, and denied the Gantas' request for attorney's fees. The trial court made Findings of Facts and Conclusions of Law as requested by the parties. The Gantas filed a motion for new trial that was overruled by operation of law. This appeal followed.

### III. EASEMENT INTERPRETATION

The Gantas argue that the easement was intended to benefit only the owners of Lots 11, 12, 23, and 22 in Seven Oaks. Because Lot 7 in Tumbleweed Hills is not one of the designated lots, the Gantas argue Williams cannot be allowed to turn left from the easement onto Lot 7 but may only use the easement to turn right onto Lot 12, or right onto Lot 22. By their first issue, the Gantas complain that the trial court erred by allowing Williams to use the easement for vehicular access between Lot 7 and Marley Way. As part of this issue, the Gantas challenge the trial court's Conclusions of Law numbers one

7

and four.[4]

## A.    Standard of Review

We review a trial court's interpretation of easements and its conclusions of law de novo.  *Staley Family Partnership, Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016); *Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.); *see also Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *2 (Tex. App.—Corpus Christi Aug. 21, 2016, no pet.) (mem. op.) ("When an issue turns on a pure question of law, we apply a de novo standard of review.").

## B.    The Easement

An easement is a nonpossessory interest in land that authorizes the holder of the easement to use the property of another for limited purposes.  *Marcus Cable Assoc., L.P. v. Kroon*, 90 S.W.3d 697, 700 (Tex. 2002).  When considering an express easement's terms, we apply basic principles of contract interpretation.  *Id.*  "The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest."  *Id.* at 701.

Although the grantee of an express easement is permitted to do what is reasonably necessary for the fair enjoyment of the easement itself, the owner of the land burdened by the easement "retains title to the land and all that is ordinarily considered part of the land."  *Brunson v. State*, 418 S.W.2d 504, 506 (Tex. 1967); *see also State v. Brownlow*, 319 S.W.3d 649, 652 (Tex. 2010) (stating that under Texas property law concerning

---

[4] Conclusion of Law number one states: "Under the terms of the Easement, Defendant [Williams] is the grantor of the easement and Plaintiffs [Gantas] are the grantee."  Conclusion of Law number four states: "The easement does not restrict the ability of the Defendant [Williams] as grantor to use the easement to pass onto his property, Lot 7 in Tumbleweed Hills."

easements, the owners of land subject to an easement remain the title holders of the land); *Robles*, 2016 WL 1613316, at *4. Thus, the Gantas were granted an easement over Lot 12 to access Lot 23. However, the easement does not permit the Gantas to exclude Williams, who owns Lot 12, from using Lot 12 as he sees fit so long as he does not impede the Gantas' use of the easement to reach Lot 23. The Gantas seek to exclude Williams's use of a portion of his land over which they have a *nonpossessory* interest. None of the authorities they cite support their position.

The Gantas particularly rely on *Holmstrom v. Lee*, in which the easement grantee owned lots on both sides of a roadway easement. 26 S.W.3d 526 (Tex. App.—Austin 2000, no pet.). The Lees purchased two landlocked acres from a bank in a foreclosure sale that included an easement over the Holmstroms's remaining acreage. *Id.* at 533. The Lees then purchased eighteen acres from another person. *Id.* at 529. Those eighteen acres bordered the west side of the easement across from the two acres to the east owned by the Lees. *Id.* The Lees persuaded the trial court that they should be able to use the easement roadway over the Holmstroms's land to access both their house on two acres and their eighteen acres on the other side. *Id.* The court of appeals reversed. *Id.* at 534. The court held that "[t]he district court erred in granting the Lees the right to cross the easement to their eighteen acres because it improperly expanded the express easement." *Id.* The Austin court held that that the Lees were not permitted to turn left (west) off the easement road to their eighteen acres because the roadway easement was on land owned by the Holmstroms who had granted the easement solely to serve the two acres that lay east of the roadway. *Id.*

9

The Gantas rely on the blanket statement that "It is well established that an easement cannot be used to pass onto another parcel of land; it can only be used to serve the land to which it is appurtenant." *Id.* at 534. While true, that statement does not describe the situation involving Williams and the Gantas. Clearly Williams is not entitled to use his easement over the Gantas' Lot 23 to access Lot 7. But Texas law also holds that the holder of an easement may not unreasonably interfere with the use of the servient estate. *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974). Thus, the Gantas' non-exclusive, nonpossessory interest in the paver roadway over Williams's land cannot exclude Williams from full use of Lot 12. *Reaves v. Lindsay*, 326 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (noting an easement should place as little burden as possible on the servient estate); *see Trant v. Brazos Valley Solid Waste Agency Mgmt. Agency, Inc.*, 478 S.W.3d 53, 60–61 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that the landowner was within its rights to place a shooting range on property that was burdened by a non-exclusive access easement in favor of neighboring property); *see also Gulfview Condo. Council of Co-Owners, Phase II, Inc. v. Gulfview Condo. Phase 1 Council, Inc.*, No. 13-97-671-CV, 1998 WL 35277447, at *2 (Tex. App.—Corpus Christi, Dec. 30, 1998, no pet.) (mem. op.) (providing that "the fee owner of land on which an easement has been granted has the right of full dominion and use of the land not inconsistent with the reasonable enjoyment of the easement."); RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.9 (2000) (noting that "the owner of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude."). Furthermore, "a landowner cannot have an easement in

10

his own land, inasmuch as all the uses of an easement are fully comprehended in the general right of ownership." *Hidalgo County Water Control and Improvement Dist. No. 16 v. Hippchen*, 233 F.2d 712, 714 (5th Cir. 1956); *see also Milligan v. Niebuhr*, 990 S.W.2d 823, 826 (Tex. App.—Austin 1999, no pet.); *Gulfview Condo.*, 1998 WL 35277447, at *3.

The Gantas challenge the trial court's conclusion that Williams is the grantor of the easement. However, even if Williams is not the grantor, he owns Lot 12, the land that he uses to access Lot 7 and over which the Gantas' easement is located. We overrule the Gantas' first issue.

## IV.    MARLEY WAY ADDRESS

By their second issue, the Gantas complain that Williams should not be able to use a Marley Way address. Addresses are controlled by the City of Austin. The relief the Gantas seek is not relief the trial court could grant without first finding that Williams was not entitled to use the paver road on his own property to access other portions of property he owns. We have already held that Williams is entitled to use his own land to access Lot 7. We overrule the Gantas' second issue.

## V.    MODIFICATION OF THE EASEMENT

By issue three, the Gantas argue that Williams may not unilaterally modify the structure or design of the easement. The Gantas contend that any connection between the easement and Lot 7 is a change to the structure or design of the easement which they claim is prohibited by the terms of the easement unless all Lot owners (11, 12, 23, and 22) unanimously agree to the change. The Gantas' argument disregards Williams's

11

ownership of Lot 12. Williams may connect to the easement on his own property so long as it does not interfere with the Gantas' use of the easement to access Lot 23. We overrule the Gantas' third issue.

## VI.    ATTORNEY'S FEES

By their fourth issue, the Gantas seek their attorney's fees and costs. The declaratory judgment act permits the trial court to award attorney's fees and costs that are equitable and just. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The statute grants the trial court discretion to deny or award fees and costs. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Comm'rs Court of Titus Co. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). The Gantas do not argue that the trial court abused its discretion by denying attorney's fees and costs. They merely seek reversal of the denial of fees and costs based upon their belief they will prevail on appeal. We overrule the Gantas' fourth issue.

## VII.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Delivered and filed the
15th day of November, 2018.