**Opinion filed October 25, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00310-CV
_____

## TOM AND MARIE McKENNA, Appellant

## V.

## J. DANIEL CALDWELL, Appellee

**On Appeal from the 278th District Court**

**Walker County, Texas**

**Trial Court Cause No. 25035**

### O P I N I O N

Tom and Marie McKenna (McKenna) appeal the summary judgment entered in favor of J. Daniel Caldwell (Caldwell) in a dispute over an express easement. McKenna argues that the trial court erred when it granted summary judgment because the issue of whether the terms of the easement prohibit a gate or a cattle guard is a question of fact that cannot be resolved by summary judgment. Alternatively, McKenna argues that the trial court granted greater relief than requested when it ordered the removal of all gates from the easement and when it prohibited any future obstructions across the easement. Finally, McKenna complains that the evidence was insufficient to support the award of attorney's fees to Caldwell. We reverse and remand.

*Background Facts*

Both parties own real property that is located in the Alonzo Marsh Survey in Walker County, Texas. Through two separate conveyances, Caldwell and his brother, George L. Caldwell, acquired 57.12 acres. In the deeds of sale to the Caldwell brothers, the grantors reserved a 40-foot access easement across the southern boundary of the property. That easement, though not at issue, is still in use by another neighbor and Caldwell to cross McKenna's property to the public road. Four years after the Caldwell brothers acquired the 57.12 acres, Caldwell executed a partition deed in which he conveyed the southern half of the property to George and Jo Ann Caldwell. He reserved a 30-foot access easement along the eastern border to provide access to his otherwise landlocked property. The partition deed contains the following language:

> This conveyance is subject to an easement upon, over and across a thirty (30) foot strip of land adjacent to the east boundary line of the South one-half (1/2) of the above described 37.12 acres to be used in common with Grantor, his heirs and assigns, for purposes of providing a perpetual free, uninterrupted and unobstructed easement for access, ingress and egress to and from the north one-half (1/2) of said 57.12 acres.

Seven years after the partition, Jo Ann Caldwell, then a widow, deeded the southern half of the original 57.12 acres to McKenna, subject to all existing recorded encumbrances.

Prior to the date of the partition deed, and while the land was jointly owned by the Caldwell brothers, McKenna used the southern parcel and raised cattle with Caldwell on both tracts. During the time that McKenna and Caldwell raised cattle together, Caldwell installed a gate across the south end of the easement where it met the 40-foot access easement that provided access to the public road. McKenna enclosed a portion of the southern half for use as a hay field. A portion of the hay field fence bordered a section of the easement. When Caldwell stopped raising cattle, McKenna installed a cattle guard and a gate across the northern end of the easement where it meets Caldwell's property. The purpose was to prevent McKenna's cattle from roaming onto Caldwell's land. Caldwell stated that the cattle guard and gate were never an issue because the gate was left open.

McKenna originally filed suit seeking a declaratory judgment and an injunction preventing Caldwell from leaving the gate open and from harming or destroying the gate. Caldwell also filed suit seeking a declaratory judgment and an injunction preventing McKenna from obstructing the easement. Caldwell also asserted claims for trespass and negligence,

requesting damages caused by the trespass of McKenna's cattle and damages resulting from Caldwell's vehicle hitting the gate. The cases were consolidated by the trial court. Caldwell filed a motion for partial summary judgment, arguing that the terms of the easement prohibited gates as a matter of law.

McKenna's summary judgment evidence showed that Caldwell filled in the cattle guard, requiring McKenna to close the gate to prevent his cattle from roaming onto Caldwell's property. The summary judgment evidence also showed that Caldwell's vehicle was damaged when he ran into the closed gate.

The trial court granted partial summary judgment in favor of Caldwell, who nonsuited his remaining claims. Thus, the trial court's order is final and reviewable on appeal. *Ritzell v. Espeche*, 87 S.W.3d 536, 538 (Tex. 2002).

*Standard of Review*

We review the trial court's grant of summary judgment de novo, looking only to the evidence presented to the trial court. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference, and we resolve any doubts in the nonmovant's favor. *Id.* Any evidence favoring the moving party, Caldwell, will not be considered unless it is uncontradicted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

Caldwell filed a traditional motion for summary judgment, asserting that there were no genuine issues of material fact. In a traditional summary judgment motion, the moving party has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16.

*Express Easement*

In the first point, McKenna asserts that the trial court erred when it granted summary judgment in favor of Caldwell. McKenna argues that a genuine issue of material fact exists because the language of the easement does not specifically address the use of gates or cattle guards.

An easement is a nonpossessory interest in land that authorizes its holder to use the property for a particular purpose. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). The holder or dominant estate may only make such use of the easement as is

"reasonably necessary[] to fairly enjoy the rights expressly granted," lest the easement effectively become a possessory land interest. *Id.* at 701. When considering an express easement, we look to the language reserving it to determine the scope of the easement. *Id.* at 700–01. Applying basic principles of contract construction and interpretation, we give the terms of the easement their plain and ordinary meaning when they are not expressly defined. *Id.* at 701. We read the terms of an easement as a whole to determine the parties' intentions and to carry out the purpose behind the easement's creation. *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

Any ambiguities in the language or parties' intent are construed against the drafting party, and we adopt the interpretation that is the least burdensome to the non-drafting party. *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 665 (Tex. 1964); *Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 760 (Tex. App.—El Paso 2010, no pet.); *CenterPoint Energy Houston Elec. LLC v. Bluebonnet Drive, Ltd.*, 264 S.W.3d 381, 388–89 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If the contract is ambiguous, the court must "determine the true intentions of the parties, for that will resolve the ambiguity." *Fox v. Parker*, 98 S.W.3d 713, 719 (Tex. App.—Waco 2003, pet. denied). "This determination involves fact issues." *Id.*

When an easement has only one reasonable interpretation after applying the rules of contract construction, we must construe it as a matter of law. *Marcus Cable*, 90 S.W.3d at 700. Because the easement does not specifically address gates or cattle guards, we must look to the terms of the reservation and give them their ordinary and generally accepted meaning.

Both parties' arguments turn on the interpretation of the phrase "free, uninterrupted and unobstructed." Free is defined as "not subject to the constraint of another"; "unburdened." BLACK'S LAW DICTIONARY 734 (9th ed. 2009). An interruption is defined as a "break in the period of possession of land." *Id.* at 896. An obstruction is defined as "something that impedes or hinders." *Id.* at 1183.

The reservation of the easement appears to be unambiguous on its face. It is to remain free of all obstructions, without breaking the flow of Caldwell's ingress and egress. Yet, an

4

ambiguity arises when the reservation is applied to the subject matter of the actual easement and the collateral matter of McKenna's use of his property for cattle.

The summary judgment evidence is conflicting; however, we take as true all evidence favorable to the nonmovant.[1] The summary judgment evidence shows that, at the time of the partition deed, there was already a gate at the southern entrance of the easement. Most cattle guards would not be considered an "interruption" or an "obstruction," and Caldwell acknowledged that the cattle guard was never an issue. Yet, Caldwell filled in the cattle guard that McKenna used to keep his cattle from roaming onto Caldwell's property. The trial court's final judgment prohibiting any and all obstructions across the easement could be read to include cattle guards, leaving McKenna no way to maintain his preexisting use of the property: raising cattle without the cattle roaming onto Caldwell's property or the public road.

It is a question of fact whether, when the easement was created, the parties intended the access easement to be free of gates or cattle guards. *See Reaves v. Lindsay*, 326 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating that, where the language of an express easement does not specifically address the issue of whether gates and cattle guards can be installed across the easement, the rights of the dominant estate must be balanced against the burden to the servient estate).[2] The summary judgment evidence reflects that the easement was entered into with knowledge that McKenna was raising cattle with Caldwell. Because Caldwell drafted the partition deed, including the easement language, it should be construed against him.

Caldwell urges us to determine his easement rights as a matter of law, but "[w]hether the grantee of a right of way is entitled to a way unobstructed by gates or bars depends upon the terms of the grant, the provision for which it was made, the nature and situation of the property, and the manner in which it has been used." *Arden v. Boone*, 221 S.W. 265, 266 (Tex. Comm'n App. 1920, holding approved); *see Gerstner v. Wilhelm*, 584 S.W.2d 955, 958 (Tex. Civ. App.—Austin 1979, writ dism'd); *Carleton v. Dierks*, 203 S.W.2d 552, 556–57 (Tex. Civ. App.—Austin 1947, writ ref'd n.r.e.); *Burns v. McDaniel*, 158 S.W.2d 826, 827 (Tex. Civ. App.—

---

[1]We review all the summary judgment evidence in favor of the nonmoving party, McKenna. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (stating that the court reviews a summary judgment de novo and takes "as true all evidence favorable to the nonmovant").

[2]*Cf. Knight v. Buckbriar*, No. 04-01-00539-CV, 2002 WL 1285292 (Tex. App.—San Antonio June 12, 2002, no pet.) (mem. op., not designated for publication) (holding as a matter of law that the easements in question were unambiguous where they specifically stated no barriers of any kind were to be erected, other than the two gates already in existence, that would interfere with the free flow of access).

Eastland 1942, no writ). While Caldwell argues that any obstruction is prohibited by the terms of the easement, McKenna points out that Caldwell himself installed a gate across the easement and that the manner in which McKenna uses the land has not changed since Caldwell reserved his easement.

McKenna recognizes that the owner of the servient estate may not interfere with the use of an easement for the purpose for which it was granted. *Ferrara v. Moore*, 318 S.W.3d 487, 490 (Tex. App.—Texarkana 2010, pet. denied). But, he points out that Texas law also holds that the holder of an easement may not unreasonably interfere with the use of the servient estate. *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974); *Reaves*, 326 S.W.3d at 282; *Ferrara*, 318 S.W.3d at 490; *Lamar Cnty. Elec. Coop. Ass'n v. Bryant*, 770 S.W.2d 921, 923 (Tex. App.— Texarkana 1989, no writ); *San Jacinto Sand Co. v. Sw. Bell Tel. Co*., 426 S.W.2d 338, 345 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Therefore, "[a]s a general rule, the questions of whether the use of an easement by the dominant estate is reasonably necessary and convenient and of whether the use is as little burdensome as possible on the servient estate are questions of fact for the trial court or jury." *Reaves*, 326 S.W.3d at 282.

In a recent appeal from the grant of summary judgment, the Seventh Court of Appeals applied a balancing test where the express terms of the easement did not address the matter of gates. *Greenwood v. Lee*, No. 07-11-00404-CV, 2012 WL 4475441, at *11 (Tex. App.— Amarillo Sept. 28, 2012, no pet. h.). There, the dominant estate owners failed to show that their claim to gate-free passage over the easement was reasonably necessary and convenient and that their claimed right placed the least possible burden on the servient estate. *Id.* at *11–12. The court arrived at its decision after considering the nature of the properties at issue and the purpose of the easement. *Id.* at *11 (citing *Gerstner*, 584 S.W.2d at 958).

We conclude that a question of fact exists as to whether, when the easement was created, the parties intended the access easement to be free of gates or cattle guards. What may be considered a proper and reasonable use, as well as what may be necessary to the easement holder's beneficial use and enjoyment, is a question of fact. *Magnolia Pipeline Co. v. McCarter*, 52 S.W.2d 663, 666 (Tex. Civ. App.—Beaumont 1932, no writ); *Murray v. Dickson*, 123 S.W. 179 (Tex. Civ. App.—Dallas 1909, no writ).

Summary judgment is inappropriate where, based on the record, reasonable jurors could reach different conclusions as to a particular material fact. Whether a gate or cattle guard across

the northern terminus of the easement is permitted, when Caldwell had already installed a gate across the southern terminus, is a question of fact. Whether the language of the easement allows for a gate or cattle guard depends on the intent of the parties. There is evidence that a gate existed at the time the easement was granted—one installed by Caldwell. The parties' intent is clearly ambiguous. Because Caldwell did not meet his burden of showing that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law, summary judgment was inappropriate. The first point of error is sutained. Accordingly, we need not reach the merits of McKenna's second or third point of error. TEX. R. APP. P. 47.1.

*This Court's Ruling*

The judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

TERRY McCALL

JUSTICE

October 25, 2012

Panel[3] consists of: Wright, C.J.,
McCall, J., and Hill.[4]

---

[3]Eric Kalenak, Justice, resigned effective September 3, 2012. The justice position is vacant pending appointment of a successor by the governor or until the next general election.

[4]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.