

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00694-CV

Paul D. **RICE** and M. Susan Rice,
Appellants

v.

Charles C. **HICKERSON** and Eva M. Hickerson,
Appellees

From the 452nd District Court, Mason County, Texas
Trial Court No. 175739
Honorable Robert R. Hofmann, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: March 25, 2020

AFFIRMED; STAY LIFTED

This appeal centers on access to an easement—and whether the dominant estate owners may replace a pre-existing, manual gate with a cattle guard or electric gate. The dominant estate owners tried to replace the manual gate with an electric gate, but the servient estate owners stopped them. When negotiations failed, the dominant estate owners sued for declaratory and injunctive relief. After a bench trial, the court granted the requested relief, and the servient estate owners appeal. For the reasons given below, we affirm the trial court's judgment.

BACKGROUND

Appellants Paul and Susan Rice, the servient estate owners, owned over 500 acres of land in Mason County, Texas. In 2006, the Rices divided their property and sold a landlocked tract of about 175 acres, along with two access easements, to the Webers.

## A.    Easement

The easement at issue allows the dominant estate "free and unobstructed" access over a portion of the Rices' property. The easement clauses in the 2006 deed read as follows:

> The easements, rights and privileges herein granted shall be perpetual. Grantees and grantees' guests, invitees, lessees, agents and others permitted by grantees shall have free and unobstructed ingress, egress and regress, by foot, on horseback, with automobiles, trucks and other vehicles, livestock and equipment, over and across the easement tracts described herein as to grantees shall be deemed necessary or convenient at all times and seasons.
>
> The easements granted herein are non-exclusive. Grantors reserve the right to grant use of said two easement tracts to others.

Paralleling the Rices' property line, the easement is shaped like a backwards "L" as shown below.



## B.    Hickersons Purchase Property

In 2015, Chris and Eva Hickerson (the Hickersons) purchased the 175-acre tract from the Webers, and the manual gate was still in place. The Hickersons live in the home on the property as their primary residence. The Hickersons use the manual gate to access their property.

## C.      Hickersons Sue

Shortly after they purchased the land, the Hickersons tried to replace the manual gate with an electric gate, but the Rices stopped the installation.  After negotiations about the gate failed, the Hickersons sought a declaratory judgment.  They asked the trial court to construe the easement and declare that their access to the easement must be free and unobstructed.  They asked the court to order the Rices to remove the manual gate and allow them to replace it with a cattle guard or electric gate.  The Hickersons also sought attorney's fees and costs.

## D.      Trial Court Awards Discovery Sanctions

In a discovery dispute, the Rices failed to respond to numerous discovery requests, and the Hickersons sought discovery sanctions.  In response, the Rices sought sanctions against the Hickersons.  After a hearing, the trial court denied the Rices' motion for sanctions and sanctioned Susan Rice $1,500 for failure to cooperate in discovery.

## E.      Bench Trial, Appeal

Both sides moved for summary judgment, but the trial court denied both motions and the case proceeded to trial.  After a bench trial, the trial court rendered a final judgment.  The judgment declares "that the present manual gate across the easement constitutes an obstruction to [the Hickersons'] necessary and convenient use of the easement."  It permanently enjoins the Rices from maintaining the manual gate or any other obstruction across the easement.  And it prohibits the Rices from interfering with the Hickersons' installation of an electric gate, cattle guard, or other device to replace the manual gate.  The judgment also orders that the Hickersons recover their attorney's fees from the Rices.

The Rices requested findings of fact and conclusions of law, which the trial court made.

On appeal, the Rices identified eleven issues but organized their arguments into five:

- the trial court erred in granting injunctive and declaratory relief,

- some of the declaratory relief granted was advisory,
- there was insufficient evidence to find the easement's dimensions,
- the trial court's sanctions against Susan Rice were an abuse of discretion, and
- the award of attorney's fees was not equitable and just.

We address each issue in the same order argued by the Rices.

### INJUNCTIVE, DECLARATORY RELIEF

In their first issue, the Rices argue the trial court erred in granting injunctive and declaratory relief for the Hickersons. As subparts to their first issue, the Rices argue the easement language is ambiguous, the evidence was neither legally nor factually sufficient to support the trial court's findings on the Hickersons' control over the easement, the judgment changes the nonexclusive easement into an exclusive easement, and the declaratory relief misconstrues the terms of the easement. We address each argument in turn.

## A.     Easement Ambiguity

For the ambiguity question, the relevant portion of the easement reads as follows:

Grantees and grantees' guests, invitees, lessees, agents and others permitted by grantees shall have free and unobstructed ingress, egress and regress, by foot, on horseback, with automobiles, trucks and other vehicles, livestock and equipment, over and across the easement tracts described herein as to grantees shall be deemed necessary or convenient at all times and seasons.

The trial court concluded that the easement's plain language was not ambiguous and as grantees, the Hickersons were entitled to "free and unobstructed ingress, egress and regress . . . over and across the easement" and thus the manual gate across the Hickersons' entrance violated their easement rights. The trial court added that if the easement terms are ambiguous, it found the necessary facts to reach the same conclusions.

### 1.     Parties' Arguments

The Rices contend the easement terms contain both patent and latent ambiguities. According to the Rices, a patent ambiguity exists because the easement does not expressly address

gates, and a latent ambiguity exists because the Rices' use of the easement to raise livestock conflicts with the "free and unobstructed ingress [and] egress" term.

The Hickersons argue the easement's terms are not ambiguous, the plain language grants them "free and unobstructed" access to the easement, and the trial court properly decided that the manual gate was an unauthorized obstruction.

Before we analyze the arguments, we recite the standards of review and the applicable law for construing the easement language.

### 2. Standards of Review

For questions of law, such as construction of an unambiguous deed, we review the trial court's ruling de novo. *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019); *Kardell v. Acker*, 492 S.W.3d 837, 842 (Tex. App.—San Antonio 2016, no pet.).

If a party challenges the legal or factual sufficiency of the evidence to support a trial court's findings of fact, we use the same standards for reviewing a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, No. 17-0736, 2020 WL 499243, at *6 (Tex. Jan. 31, 2020).

For legal sufficiency, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Teal Trading*, 2020 WL 499243, at *6 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "[We] consider evidence in the light most favorable to the verdict, and [we] indulge every reasonable inference that would support it." *City of Keller*, 168 S.W.3d at 822; *accord Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

"For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *accord Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners*

*Ass'n*, 534 S.W.3d 558, 582 (Tex. App.—San Antonio 2017), *aff'd*, No. 17-0736, 2020 WL 499243 (Tex. Jan. 31, 2020).

When a party attacks the factual sufficiency of an adverse finding on which the party did not have the burden of proof at trial, we consider and weigh all the relevant evidence, and we will "set[] aside the finding only if . . . [we] determine that the credible evidence supporting the finding is so weak . . . that the answer should be set aside and a new trial ordered." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016); *see* W. Wendell Hall & Ryan G. Anderson, *Standards of Review in Texas*, 50 St. Mary's L.J. 1099, 1135 (2019).

### 3.    Deed Construction

"A deed is subject to the same rules of interpretation and construction as a contract." *Cooke v. Morrison*, 404 S.W.3d 100, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Luckel v. White*, 819 S.W.2d 459, 461–62 (Tex. 1991)); *accord Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) ("We apply basic principles of contract construction and interpretation when considering an express easement's terms.").

"Whether a [deed] is ambiguous is a question of law for the court to decide by looking at the [deed] as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *accord Rico v. Judson Lofts, Ltd.*, 404 S.W.3d 762, 767 (Tex. App.—San Antonio 2013, pet. denied). "If a deed is worded in such a way that it can be given a definite or certain legal meaning, then the deed is not ambiguous." *Combest v. Mustang Minerals, LLC*, 502 S.W.3d 173, 185 (Tex. App.—San Antonio 2016, pet. denied) (citing *CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430–31 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). "A deed is ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations." *Combest*, 502 S.W.3d at 185; *accord Old TJC Co.*, 177 S.W.3d at 431.

If an ambiguity exists, it may be either patent or latent. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Old TJC Co.*, 177 S.W.3d at 431. "A patent ambiguity is evident on the face of the [deed]." *Old TJC Co.*, 177 S.W.3d at 431 (quoting *CBI Indus.*, 907 S.W.2d at 520). "A latent ambiguity arises when a [deed] which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *CBI Indus.*, 907 S.W.2d at 520; *accord Old TJC Co.*, 177 S.W.3d at 431.

"[A]ny ambiguity in an instrument granting an easement is to be resolved against the grantor." *Hous. Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 665 (Tex. 1964); *accord Ferrara v. Moore*, 318 S.W.3d 487, 500 (Tex. App.—Texarkana 2010, pet. denied). When we construe an express easement, "we resolve doubts about the parties' intent against the grantor, or servient, estate and adopt the interpretation that is the least onerous to the grantee, or dominant, estate in order to confer on the grantee the greatest estate permissible under the instrument." *CenterPoint Energy Hous. Elec. LLC v. Bluebonnet Drive, Ltd.*, 264 S.W.3d 381, 388–89 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Dwyer*, 374 S.W.2d at 665).

### 4. Easement Language Ambiguities

Citing three opinions, the Rices argue that a patent ambiguity exists because the easement's plain language does not expressly address gates.

#### a. Sister Courts' Opinions

They rely on three of our sister courts' opinions, but on the question of patent ambiguity, each is readily distinguishable. *Cf. Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *3, *5 (Tex. App.—Corpus Christi Apr. 21, 2016, no pet.) (mem. op.); *Greenwood v. Lee*, 420 S.W.3d 106, 119 (Tex. App.—Amarillo 2012, pet. denied); *Reaves v. Lindsay*, 326 S.W.3d 276, 281–82 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Like the Hickersons' easement language, none of the easement's provisions in the three cases expressly addressed gates. But unlike the Hickersons' easement, none of the three easements cited by the Rices define the access to the easement to be "free" or "unobstructed." *Cf. Robles*, 2016 WL 1613316, at *3 (defining "a 60' wide easement [such] that no other additional rights-of-way shall encroach upon or be common to this right-of-way" (emphasis removed)); *Greenwood*, 420 S.W.3d at 110 (defining "a 45 ft. wide strip or tract of land to be used as an access road"); *Reaves*, 326 S.W.3d at 280 (defining "a non-exclusive perpetual right-of-way and easement for the purpose of maintaining and keeping in repair a roadway").

The easement language in the Rices' three cases are substantively distinguishable, which makes the cases' reasoning—on patent ambiguity for lack of addressing gates—inapposite.

        b.      No Mention of Gates is not Patent Ambiguity

Even though it does not mention gates, the Hickersons' easement's plain language states the Hickersons "shall have free and unobstructed ingress, egress and regress . . . across the easement." This portion of the easement language, on its face, is susceptible to only one reasonable, definite interpretation; it is not patently ambiguous. *Cf. Reaves*, 326 S.W.3d at 281–82; *Old TJC Co.*, 177 S.W.3d at 431.

        5.     *Latent Ambiguity*

The Rices also argue the easement has a latent ambiguity because the "free and unobstructed" language does not expressly address the Rices' use of their land to raise livestock. They argue that "free and unobstructed" access cannot mean gate-free access because that is inconsistent with their raising livestock on their land—which they were doing at the time the Hickersons purchased the property. The Rices rely on *McKenna v. Caldwell*, which is helpful in our analysis. 387 S.W.3d 830 (Tex. App.—Eastland 2012, no pet.).

a.    *McKenna v. Caldwell*

In *McKenna*, the partition deed created an easement "for purposes of providing a perpetual free, uninterrupted and unobstructed easement for access, ingress and egress to and from" Caldwell's land. *Id.* at 833. The court determined that the easement was unambiguous on its face, but it noted a latent "ambiguity arises when the reservation is applied to the subject matter of the actual easement and the collateral matter of McKenna's use of his property for cattle." *Id.* at 835.

The court queried "whether, when the easement was created, the parties intended the access easement to be free of gates or cattle guards." *Id.* Quoting *Reaves*, the court noted that "[a]s a general rule, the questions of whether the use of an easement by the dominant estate is reasonably necessary and convenient and of whether the use is as little burdensome as possible on the servient estate are questions of fact for the trial court or jury." *Id.* at 836 (alteration in original) (quoting *Reaves*, 326 S.W.3d at 282).

*McKenna* "conclude[d] that a question of fact exists as to whether, when the easement was created, the parties intended the access easement to be free of gates or cattle guards," and it denied the motion for summary judgment. *Id.*

b.    Free and Unobstructed Access with Livestock

Like *McKenna*, the Hickersons' easement's plain language provides for "free and unobstructed" access, but it does not expressly address the use of gates, either manual or electric, or cattle guards to confine the livestock. *Cf. id.* at 833–34. But unlike *McKenna*, on the question of free and unobstructed access across a servient estate that has a pre-existing and longstanding use of raising livestock, *cf. id.* at 833, the Hickersons' easement has additional language that we must consider.

c.      As to Grantees Clause

The Hickersons' easement grants "free and unobstructed ingress, egress and regress . . . across the easement tracts described herein as to grantees [which] shall be deemed necessary or convenient at all times and seasons."  When we construe the granting language in an express easement, "we resolve doubts about the parties' intent against the grantor, or servient, estate and adopt the interpretation that is the least onerous to the grantee, or dominant, estate in order to confer on the grantee the greatest estate permissible under the instrument." *Bluebonnet Drive*, 264 S.W.3d at 388–89 (citing *Dwyer*, 374 S.W.2d at 665); *accord McKenna*, 387 S.W.3d at 834.

Considering the easement's plain language as a whole, and applying the principles of construction, we construe the "as to grantees" clause to designate the grantees—the Hickersons— as the ones who decide what is necessary or convenient for their free and unobstructed access to the servient estate.  *See Bluebonnet Drive*, 264 S.W.3d at 388–89; *see also Dwyer*, 374 S.W.2d at 665.

d.      Construing Free and Unobstructed with Necessary or Convenient

Regarding the servient estate, it is undisputed that the Rices were raising livestock on it when the easement was created and when the Hickersons purchased the property.  It is indisputable that the easement's plain language does not expressly address cattle guards or gates, either manual or electric.  Therefore, on the question of whether an electric gate or cattle guard provides free and unobstructed access and is necessary or convenient as to the Hickersons given the Rices' use of the servient estate to raise livestock, the easement's plain language presents a question of fact, which was addressed by the parties at trial.  *See McKenna*, 387 S.W.3d at 836.

We turn next to the Rices' evidentiary challenges on the trial court's findings.

**B.** **Evidentiary Challenges**

In the second part of their first issue, the Rices challenge the legal and factual sufficiency of the evidence supporting the trial court's findings. Specifically, they argue that the reasonable use balancing test recited in *Greenwood* (and discussed below) should apply, *see Greenwood v. Lee*, 420 S.W.3d 106, 119 (Tex. App.—Amarillo 2012, pet. denied), and the Hickersons "failed to show that their request to install an electric gate and cattle guard is reasonably necessary and convenient." The Rices also complain that the Hickersons "fail[ed] to show how their proposed relief imposes the lightest possible burden on the Rices' ongoing use of their property to raise cattle and livestock." *See id.*

Before we address the sufficiency of the evidence, we determine whether the reasonable use balancing test applies.

*1. Reasonable Use Balancing Test*

In *Greenwood*, the court adopted the reasonable use balancing test recited by *Reaves*. *Id.* at 119 (citing *Reaves v. Lindsay*, 326 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). *Reaves* stated the test as follows: "When an express easement is *stated in general terms*, the easement 'implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner.'" *Reaves*, 326 S.W.3d at 282 (emphasis added) (quoting *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)).

Before we consider what to balance, we must determine whether the test applies.

a. Easement Not Stated in General Terms

The reasonable use balancing test applied in *Reaves* and *Greenwood* because the courts determined the express easements at issue were "stated in general terms."

In *Greenwood*, the easement was stated as "[a]n Easement and right-of-way over a certain tract or parcel of land." *Greenwood*, 420 S.W.3d at 110. In *Reaves*, the easement was stated as

"a non-exclusive perpetual right-of-way and easement . . . for the use, liberty, privilege and easement of passing . . . over and across the [servient estate]." *Reaves*, 326 S.W.3d at 279.

Neither easement expressly addressed reasonable necessity or convenience; therefore, *Greenwood* and *Reaves* implied a requirement that the easement's use was limited to that which was "reasonably necessary and convenient and as little burdensome as possible to the servient [estate] owner." *See Reaves*, 326 S.W.3d at 279 (quoting *Coleman*, 514 S.W.2d at 903); *accord Greenwood*, 420 S.W.3d at 110.

But unlike *Greenwood* or *Reaves*, on the matter of necessity and convenience, the Hickersons' easement language was not silent or merely stated in general terms. *Cf. Greenwood*, 420 S.W.3d at 110; *Reaves*, 326 S.W.3d at 279. The plain language states that the Hickersons "shall have free and unobstructed [access] over and across the easement . . . as to [the Hickersons] shall be deemed necessary or convenient at all times and seasons."

As we have construed it, this language gives the Hickersons the right to decide what is necessary or convenient for their free and unobstructed access to the servient estate. Thus, the *Greenwood* and *Reaves* objective "reasonably necessary and convenient" test does not apply. *Cf. Greenwood*, 420 S.W.3d at 110; *Reaves*, 326 S.W.3d at 279. Because the test does not apply, the Rices' argument—that the Hickersons failed to show that an electric gate or cattle guard was reasonably necessary and convenient—is inapposite and is no basis to reverse the trial court's judgment.

b.     Lightest Possible Burden

The Rices also sought to challenge the legal and factual sufficiency of the evidence of a cattle guard or electric gate being "as little burdensome as possible to the servient owner," *see Reaves*, 326 S.W.3d at 282 (quoting *Coleman*, 514 S.W.2d at 903), but they failed to present any legal arguments for our review. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and

concise argument for the contentions made, *with appropriate citations to authorities* and the record." (emphasis added)); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010).

The Rices cited portions of the reporter's record regarding gates and cattle guards, but in the two pages they used to express their concerns, they did not cite any authorities to construct or support a legal argument. *Contra* TEX. R. APP. P. 38.1(i); *Swinnea*, 318 S.W.3d at 880. They did not cite a single statute, rule, or case to show how the trial court erred, and we cannot create their argument for them. *Cf. Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.— Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").

We conclude the Rices waived this complaint. *See* TEX. R. APP. P. 38.1(i); *Canton-Carter*, 271 S.W.3d at 931.

## C.    Judgment Changes Easement Use to Exclusive

In the third part of their first issue, the Rices argue the trial court's judgment "transforms the non-exclusive easement into an exclusive easement." They argue that the judgment's declaration that "[t]he manner and means for the reasonable confinement of livestock shall be as [the Hickersons] deem[] convenient" gives the Hickersons "total control over access to the easement" and defies the easement's express language that it is non-exclusive.

The Rices rely on *Orange County* for the following proposition: "a nonexclusive easement in gross is 'one which does not give, as against the owner of the servient tenement and others who may be privileged under him, the sole privilege of making the use authorized by the easement.'" *Orange Cty., Inc. v. Citgo Pipeline Co.*, 934 S.W.2d 472, 476 (Tex. App.—Beaumont 1996, writ denied) (quoting RESTATEMENT (FIRST) OF PROPERTY § 493 (1944)). But the Rices' argument necessarily fails for at least two reasons.

First, the use the Hickersons may make of the easement is to enter and traverse it, *cf. id.*, and the manual gate is not the only access to the easement. There is a second gate, adjacent to the manual gate, which the Rices regularly use to access the easement, and the judgment does not affect the Rices' ability to enter or traverse the easement using the Rices' gate. *Cf. id.*

Second, the Rices do not explain or provide any legal authorities to show how the Hickersons' replacing the manual gate with an electric gate or cattle guard would prevent the Rices from accessing the easement using the electric gate or crossing a cattle guard. *Cf. id.*

We overrule this subissue.

**D.     Judgment Changes Easement Terms**

In the fourth part of their first issue, the Rices argue the judgment "improperly changes the plain terms of the easement." The Rices complain that the judgment's declaration that a cattle guard does not interfere with the servient estate "is nonsensical" because "the experts for both parties agreed that [a] cattle guard is unsafe for horses, livestock and people to cross."

Again, the Rices failed to cite a single statute, rule, or case to show how the trial court erred. *Contra* TEX. R. APP. P. 38.1(i); *Canton-Carter*, 271 S.W.3d at 931. We simply cannot discern whether they are challenging the sufficiency of the evidence or the trial court's construction of the easement language, and we cannot create their argument for them. *See Canton-Carter*, 271 S.W.3d at 931. Even if we could surmise, which we may not, that the Rices were raising an evidentiary challenge, we would note the Rices failed to distinguish the testimony that cattle guards can be safely crossed by horses, livestock, and people using vehicles; people can safely cross cattle guards on foot; and horses, livestock, and people can all access the easement on foot (or hoof) using the Rices' entrance. In this fourth part of their first issue, the Rices failed to present any legal argument for our review.

Having considered each of the subparts in their first issue, we overrule the Rice's first issue.

**ADVISORY RELIEF**

In their second issue, the Rices contend a portion of the trial court's judgment is advisory and should be stricken.[1]  The complained of portion of the judgment reads as follows:

> Plaintiffs' use and enjoyment of the easement in a manner and means as deemed convenient by Plaintiffs (whether now or in the future) will not unreasonably interfere with Defendants' use of the servient estate, and such use is as lightly and little burdensome as possible on the servient estate, so long as said use and enjoyment allows for the reasonable confinement of livestock to Defendants' land. The manner and means for the reasonable confinement of livestock shall be as Plaintiff deems convenient (whether now or in the future). . . .  In the future, some novel and new manner for reasonably confining livestock while permitting unobstructed passage upon the easement may be developed which Plaintiffs may deem convenient and may substitute in place of the confining structure in use at that time.

The Rices argue that this portion of the judgment decides "in advance . . . a future hypothetical dispute between the Hickersons and the Rices as to whether some new invention in lieu of a cattle guard and electric gate adequately protects the Rices['] livestock."

We disagree.

## A.    Ripeness

"A court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe." *Pub. Util. Comm'n of Tex. v. Hous. Lighting & Power Co.*, 748 S.W.2d 439, 442 (Tex. 1987); *accord Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998).

"Ripeness . . . focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Patterson*, 971 S.W.2d at 442

---

[1] On appeal, the Hickersons argue that the Rices failed to preserve their advisory opinion complaint for appellate review.  But the Rices challenge a portion of the trial court's judgment for ripeness, and ripeness may be raised for the first time on appeal. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998) ("Ripeness is an element of subject matter jurisdiction."); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal . . . .").

(quoting 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532 (2d ed. 1984)).

"Under the ripeness doctrine, we consider whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000) (quoting *Patterson*, 971 S.W.2d at 442). "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Id.* at 852 (citing *Patterson*, 971 S.W.2d at 443).

Ripeness is a question of law which we review de novo. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)).

## B.    Discussion

In their suit, the Hickersons asked the trial court to construe the easement and to declare the parties' rights under the easement.

The easement language states that "Grantees . . . shall have free and unobstructed [access] across the easement . . . as shall be deemed necessary or convenient *at all times and seasons*." (emphasis added). By its plain language, the easement gives the Hickersons the right to determine what form of access is necessary or convenient, now and in the future. The easement language allows the Hickersons to subjectively determine what easement access means is necessary or convenient for their free and unobstructed access.

The judgment reiterates that the Hickersons may substitute, in the future, "some new and novel manner for reasonably confining livestock while permitting unobstructed passage upon the easement . . . which [the Hickersons] may deem convenient and may substitute in place of the confining structure in use at that time." The trial court's judgment declaring the parties' rights

under the easement was the present determination of actual, existing facts. *Cf. Gibson*, 22 S.W.3d at 851–52; *Patterson*, 971 S.W.2d at 442.

Further, the judgment restricts the Hickersons' rights to "so long as said use and enjoyment allows for the reasonable confinement of livestock to [the Rices'] land." The judgment requires that the Hickersons' selected manner or means be objectively reasonable to confine livestock to the Rices' land.

Contrary to the Rices' assertion, the portion of the judgment that construes the easement language and declares that the easement allows the Hickersons to substitute a "new and novel" manner in the future does not decide in advance a future hypothetical dispute about whether a novel manner or means reasonably confines the Rices' livestock to their land. *Cf. Gibson*, 22 S.W.3d at 851–52; *Patterson*, 971 S.W.2d at 442. The judgment merely declares the Hickersons' rights under the easement—which include future rights.

We conclude the challenged portion of the judgment is not an advisory opinion on a matter that is not yet ripe. *Cf. Pub. Util. Comm'n of Tex.*, 748 S.W.2d at 442. We overrule the Rices' second issue.

### EASEMENT DIMENSIONS

In their third issue, the Rices argue the trial court committed reversible error by (1) admitting a plat into evidence that was not properly authenticated and (2) making a finding on the easement's dimensions based on the improperly admitted plat.

The Hickersons contend the trial court did not abuse its discretion in admitting the plat because both parties agreed the plat accurately depicted the properties and the easement, and any error admitting the plat was harmless because the plat was merely duplicative of other evidence.

Before we address the parties' arguments, we briefly recite the applicable law and standard of review.

**A.    Admitting Evidence, Standard of Review**

"The admission and exclusion of evidence is committed to the trial court's sound discretion." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *accord Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *D & M Marine, Inc. v. Turner*, 409 S.W.3d 693, 699 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).  "The test for abuse of discretion is . . . whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

"[We] must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).  And "[u]nless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see* TEX. R. APP. P. 44.1(a)(1) (reversible error).

**B.    Admitting Plat as Evidence**

At trial, the deed from the Hickersons' grantors to the Hickersons was admitted without objection.  In Exhibit B to the deed, the metes and bounds describe the easement and its dimensions.  Chris Hickerson testified that the easement's dimensions were shown on the metes and bounds.

Initially the plat was offered for demonstrative evidence and discussed by the witnesses. In their examinations, Chris Hickerson and Paul Rice both testified that the plat showed the Hickersons' easement.  After the trial court heard detailed testimony about the easement, its dimensions, and the plat showing the easement, the Hickersons offered the plat into evidence.

The Rices objected that the plat had not been properly authenticated by a surveyor, but the trial court overruled the objection and admitted the plat.

Having reviewed the record, we cannot conclude the trial court abused its discretion in admitting the plat. *See Bent Morales v. Lugo*, 464 S.W.2d 694, 697 (Tex. App.—Corpus Christi 1971, writ ref'd n.r.e.) (admitting a plat); *see also Downer*, 701 S.W.2d at 241–42 (abuse of discretion); *Malone*, 972 S.W.2d at 43 (any legitimate basis).

## C.      Finding on Easement Dimensions

The trial court found that "[t]he Easement is approximately 40 feet in width until its northernmost point where it expands to approximately 60 feet in width." The plat's field notes give dimensions for annotated portions of the easement, i.e., L4, L8. The field notes show L4, the northernmost dimension of the easement as 59.67 feet wide and L8, the width of the north-south portion of the easement as 40.43 feet.

The Rices complain that the trial court erred by relying on the plat to make its finding on the easement's dimensions, but their argument is unavailing.

Although the plat was used repeatedly as a demonstrative for the witnesses' examination, the trial court could have relied on other evidence to make its easement dimensions finding. For example, Chris Hickerson testified the easement was forty feet wide, and he noted the metes and bounds description in Exhibit B of his deed—which was admitted—showed the main easement width as being forty feet. Paul Rice acknowledged that the top of the easement was sixty feet wide but insisted the easement's main width was only thirty feet.

As the factfinder, the trial court was free to accept the deed, the metes and bounds, and Chris Hickerson's testimony and reject the contradictory portions of Paul Rice's testimony. *See Lemus v. Aguilar*, 491 S.W.3d 51, 59 (Tex. App.—San Antonio 2016, no pet.) ("The judge may take into consideration all the facts and surrounding circumstances in connection with the

testimony of each witness and accept or reject all or any part of that testimony." (quoting *Munters Corp. v. Swissco-Young Indus., Inc.*, 100 S.W.3d 292, 297 (Tex. App.—Houston [1st Dist.] 2002, pet. dism'd))).

We conclude the evidence was sufficient to support the trial court's finding—even without the plat being admitted as evidence.

## D.     No Reversible Error

If the trial court erred in admitting the plat, the Rices were required to show how the admission of the plat "probably caused the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a)(1); *Able*, 35 S.W.3d at 617. But as we have already determined, the plat was merely cumulative, and "[w]hen erroneously admitted evidence is merely cumulative, any error in its admission is harmless." *See Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 559 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998).

We overrule the Rices' third issue.

### DISCOVERY SANCTIONS

In their fourth issue, the Rices complain that the trial court abused its discretion when it sanctioned Susan Rice for discovery abuses.

After the Hickersons filed their lawsuit, the parties got into a dispute about discovery. The Hickersons sent several discovery requests and inquiries about the status of the Rices' discovery responses. Susan Rice, the Rices' lawyer, responded to other matters in the Hickersons' correspondence, but on three separate occasions, she did not respond to the Hickersons' discovery inquiries. The Hickersons filed a motion to compel the unanswered discovery and requested attorney's fees for the time they spent trying to get Susan Rice to respond to their discovery.

After a hearing, the trial court signed an order sanctioning Susan Rice $1,500 for failing to confer and cooperate in discovery with opposing counsel.

**A.      Parties' Arguments**

The Rices challenge the sanctions order because, in their view, the trial court "fail[ed] to analyze or apply the law related to Rule 47 correctly to the facts of this case." *See* TEX. R. CIV. P. 47 (Claims for Relief).  They insist that because the Hickersons failed to comply with Rule 47, the Rices were not obliged to comply with the Hickersons' discovery requests until thirty days after the Hickersons complied with Rule 47, and therefore, the trial court sanctioned Susan Rice before the Rices' discovery responses were due.

The Hickersons argue the trial court's sanctions order should be upheld because the trial court's findings of fact "demonstrate[] multiple recognized bases for the trial court's sanctions order."  They assert that the trial court could properly sanction Susan Rice based on her violation of Rule 191.2 and under the court's inherent authority.  *See* TEX. R. CIV. P. 191.2 (Conference), 215.3 (discovery process abuse); *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 572 (Tex. 2018) ("Trial courts have broad [inherent] authority to impose appropriate sanctions on recalcitrant litigants.").

**B.      Sanctions Order**

At the hearing on the parties' cross-motions for sanctions, the trial court denied the Rices' motion for sanctions and took the Hickersons' motion to compel discovery and request for sanctions under advisement.  Later the same day, the trial court signed its sanctions order.  The relevant portion of the order reads as follows:

> The Court finds that, despite good faith attempts at cooperation and resolution made by counsel for Plaintiff, Defendant/Counsel M. Susan Rice failed and refused to confer and cooperate in discovery with opposing counsel as required by the Texas Rules of Civil Procedure.
>
> IT IS THEREFORE ORDERED that M. Susan Rice is sanctioned $1,500.00 for violation of said rules.  Said sanction is due and payable by December 1, 2017.

The trial court also filed its six-page findings of fact and conclusions of law which comprised forty-nine findings and conclusions. Before we analyze the order, we briefly recite the standard for our review.

## C.      Standard of Review

"A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard." *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *accord Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). "In determining whether the trial court abused its discretion, the appellate court must ensure that the sanctions were appropriate or just." *Am. Flood Research*, 192 S.W.3d at 583 (citing *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991)). To make that determination, we engage in a two-part inquiry. *Id*.

> First, [we] must ensure that there is a direct relationship between the improper conduct and the sanction imposed; in other words, [we] examine whether punishment was imposed upon the true offender and tailored to remedy any prejudice discovery abuse caused. Second, [we] must make certain that less severe sanctions would not have been sufficient to promote compliance.

*Id.* As we conduct our review, we "are not bound by a trial court's findings of fact and conclusions of law; rather, [we] must independently review the entire record to determine whether the trial court abused its discretion." *Id.*

## D.      Pertinent Facts

In our review, we are not limited to the trial court's findings to determine whether the sanctions were appropriate or just, but having reviewed the entire record, we conclude that the trial court's findings are consistent with the record. *See id.*

The record shows that the Hickersons sent the Rices discovery requests, but the Rices did not timely respond. Twice the Hickersons followed up with e-mails asking about the late discovery responses. Susan Rice responded to another topic in the e-mails, but she did not acknowledge or explain the failure to produce discovery.

About four weeks after the second e-mail, the Hickersons' attorney sent Susan Rice a letter noting the Rices' discovery responses were overdue and asking to resolve the matter without resorting to a motion to compel. In her e-mail response, Susan Rice noted that "if you proceed with filing a Motion to Compel let me know the possible hearing dates." She did not explain why she had failed to comply with discovery or make any attempt to confer with opposing counsel to resolve the dispute without the court's intervention. *Contra* TEX. R. CIV. P. 191.2.

At the sanctions hearing, Susan Rice repeatedly insisted she had no obligation to respond to the Hickersons' discovery requests because the Hickersons failed to include the Rule 47(c) notice regarding the amount of monetary relief sought, and she had no obligation to tell them the reason for her failure to respond. The Hickersons' attorney noted, and Susan Rice acknowledged, that the Rices' initial counterclaim also failed to include the Rule 47(c) statement, but despite the omission, the Hickersons responded to six discovery requests from the Rices.

The trial court found that Susan Rice failed to comply with Rule 191.2 and the totality of her conduct abused the discovery process. We agree.

## E. Appropriateness of Sanctions

The trial court could have disallowed the Rices from obtaining additional discovery, charged the Hickersons' discovery expenses against the Rices, deemed admissions against the Rices, barred the Rices from presenting evidence on defenses, stricken portions of their pleadings, or ordered Susan Rice to pay the reasonable expenses, including attorney's fees, that the Hickersons incurred based on Susan Rice's failure to respond. *See* TEX. R. CIV. P. 215.3; *Cire*, 134 S.W.3d at 839.

The trial court did not impose any of the available sanctions against the Rices that restricted their ability to seek additional discovery or respond to the Hickersons' requests. *See* TEX. R. CIV. P. 215.3; *Cire*, 134 S.W.3d at 839. Instead, based on her violations of Rule 191.2, the trial court

simply ordered Susan Rice to pay the Hickersons $1,500—less than the amount of their attorney's fees for the delays caused by Susan Rice. *See* TEX. R. CIV. P. 215.3; *Cire*, 134 S.W.3d at 839.

The trial court did not sanction the Rices as parties; it sanctioned only Susan Rice in her role as the Rices' attorney, and we conclude "the sanction was imposed upon the true offender." *See Am. Flood Research*, 192 S.W.3d at 583. And the sanctions order was "no more severe than necessary to satisfy its legitimate purposes," *see Powell*, 811 S.W.2d at 917, to remedy the prejudice caused the Hickersons by Susan Rice's abuse of the discovery process, *see Am. Flood Research*, 192 S.W.3d at 583.

Having reviewed the entire record and applying the required two-part inquiry, we conclude the trial court's sanctions order was appropriate or just. *See id.* We overrule the Rices' fourth issue.

### ATTORNEY'S FEES

In their fifth issue, the Rices argue that the award of attorney's fees to the Hickersons based on their declaratory judgment action is not equitable and just.

The Rices' sole argument is that because "the trial court's judgment lacks any basis in law and fact, the award of attorneys' fees to the Hickersons is not equitable and just." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (allowing courts to "award costs and reasonable and necessary attorney's fees as are equitable and just").

Having overruled each of the Rices' other issues, we necessarily conclude that their sole argument against the award of attorney's fees fails. We overrule the Rices' fifth issue.

### CONCLUSION

For the reasons given above, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice